**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**
*Newport News Division*

**JOANN WRIGHT HAYSBERT,**

      **Plaintiff,**

v.                                                                Civil Action No.: 4:24-CV-87

**OUTBACK STEAKHOUSE OF
FLORIDA, LLC, AND
BLOOMIN' BRANDS, INC. et al.,**

      **Defendants.**

**PLAINTIFF'S UPDATED PRETRIAL BRIEF IN SUPPORT OF
ADMITTING WORK ORDER NO. 1 INTO EVIDENCE**

COMES NOW, Plaintiff, JoAnn Wright Haysbert by counsel, and submits this updated pretrial brief in support of admitting Work Order No. 95465523, created March 7, 2018, requesting floor repair to the Subject Location ("Work Order No. 1") into evidence.

**I.      FACTUAL BACKGROUND**

Work Order No. 1 is a work order for the Subject Location dated March 7, 2018. It states in part: "Floor up front needs replaced/ Floor not refinished correctly lots of slip and falls. When temperature changes outside it tends to collect moisture and sweat[.]" Work Order No. 1 was produced to Plaintiff by Defendant Outback Steakhouse on June 2, 2021 in response to Plaintiff's Request for Production of Documents, Set No. 2.

Work Order No. 1 was prepared and submitted by Marcus Wilson, a manager at the Chesapeake Outback Steakhouse. Deposition of Marcus Wilson ("Wilson Dep."), Tr. 42:7-15. At the request of the Court, Day 4 Tr. 696:14-2 [ECF No. 307], on August 13, 2021, Plaintiff and

Defendants previously filed trial briefs on the admissibility of Work Order No. 1 under FRE 407. [ECF No. 300, 301].[1]

## II. ARGUMENT

### A. *Work Order No. 1 Should Be Admitted Into Evidence – It is not Evidence of Subsequent Remedial Measures*

In their Trial Brief as to Subsequent Remedial Measures ("Def's SRM Brf.") [ECF No. 301], Defendants sought to exclude Work Order No. 1 from evidence under FRE 407 because, while the work order was created on March 7, 2018 - before Dr. Haysbert's slip and fall on May 23, 2018 - the floors were not ultimately replaced until December 2018, after the incident. Def's SRM Brf. 1. Defendants' further argument that the feasibility of precautionary measures is not disputed is premised on Work Order No. 1 being a subsequent remedial measure.  It is not. Both the text and purpose of Federal Rule of Evidence ("FRE") 407 make clear that it is inapplicable to evidence of knowledge that predates the incident at issue. FRE 407 speaks of "measures … taken that would have made an *earlier* injury or harm less likely" (emphasis added). Here, Work Order No. 1 is not evidence of a measure taken that would have reduced the risk of an earlier injury because it predates the injury. See Advisory Committee Notes on FRE 407 - 1997 Amendment ("[T]he rule applies only to changes made after the occurrence that produced the damages giving rise to the action. Evidence of measures taken by the defendant prior to the 'event' causing 'injury or harm' do not fall within the exclusionary scope of Rule 407") (citing Chase v. General Motors Corp., 856 F.2d 17, 21–22 (4th Cir. 1988)).

As the 4th Circuit has explained, "The rationale behind Rule 407 is that people in general would be less likely to take subsequent remedial measures if their repairs or improvements

---

[1] The trial briefs addressed both Work Order No. 1 and a second work order dated August 27, 2018, which is the subject of a separate updated pretrial brief.

would be used against them in a lawsuit arising out of a prior accident." Werner v. Upjohn Co., Inc., 628 F. 2d 848, 857 (4th Cir. 1980); accord Advisory Committee Notes on Proposed FRE 407. Work Order No. 1 was issued before Dr. Haysbert's slip and fall, therefore, admitting it to evidence would not chill any premises owner from taking actual remedial measures after an accident.

As Work Order No. 1 shows, it was rejected on November 14, 2018. The eventual replacement of the floors in December 2018 was done under a different work order issued in August 2018. See Work Order No. 103519732. Defendants should therefore not be allowed to conflate Work Order No. 1 with the replacement of the floors in December 2018 so as to exclude critical evidence that they were aware of a dangerous defect in the condition of the floor months before Dr. Haysbert's slip and fall.

    B. *The Statements in Work Order No. 1 are Not Hearsay or Fall Within the Business Record Exception to the Rule Against Hearsay*

Defendants have conceded that Work Order No. 1 is a business record. See Def's SRM Brf. 2. The document itself thus falls within the so-called Business Record Exception, FRE 803(6), to the rule against hearsay. Defendants argued, however, that the statements of Mr. Wilson contained within Work Order No. 1 are themselves hearsay and not subject to any exception. See Def's SRM Brf. 2. This position is not entirely correct. Mr. Wilson's statements are not hearsay as defined by FRE 801 because they are opposing-party statements. Furthermore, even if these statements are deemed to be hearsay, they are nevertheless admissible because they fall within the exception in FRE 803(1) for present sense impressions or FRE 803(6) for records of a regularly conducted activity (*i.e.*, the business record exception).

      i.      <u>The statements in Work Order No. 1 are not hearsay because they are statements of an opposing party under FRE 801(d)(2)(C) and (D).</u>

FRE 801(d)(2) provides in relevant part that a statement is not hearsay when it is "offered against an opposing party" and:

(C) was made by a person whom the party authorized to make a statement on the subject;

(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or....[2]

As the Advisory Committee Notes on Proposed FRE 801 explain, "Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule."

In this instance, the statements in Work Order No. 1 concerning the condition of the floor at issue are being offered by Dr. Haysbert, the Plaintiff, against Defendants. The statements were made by Mr. Wilson who was, at the time a manager at the Chesapeake Outback. In this role, Mr. Wilson would have been authorized to create work orders and make statements within such work orders explaining the necessity of the work done. The fact that these statements were made internally within the company or to its contracted service provider are of no import, as a statement authorized by a party may be used against that party "without regard to any intent to disclose to third persons." Advisory Committee Notes on Proposed FRE 801. As such, the statements in Work Order No. 1 are excluded from the definition of hearsay under FRE 801(d)(2)(C).

---

[2] The use of "or" at the end of clause (D) indicates that a statement is not hearsay if it falls under *either* clause (C) or (D).

Mr. Wilson was also at the time an "agent or employee" of Defendants. *See* Wilson Dep. Tr. 52:25-53:7. His statements concerning the condition of the floor fell "within the scope of that [agency or employment] relationship" because his responsibilities included "mak[ing] sure the floors [were] safe." Wilson Dep. Tr. 73:24-74:7. These statements were also made "while [the relationship] existed" because Mr. Wilson's employment at the Chesapeake Outback lasted at least until August 2018. Accordingly, the statements in Work Order No. 1 are excluded from the definition of hearsay under FRE 801(d)(2)(D).

      ii.    Even if the statements in Work Order No. 1 are considered hearsay, they are admissible as business records or present sense impressions.

FRE 803(6) allows hearsay evidence to be admitted if it constitutes "[a] record of an act, event, condition, opinion, or diagnosis" and the following conditions are met:

(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness…; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

As Mr. Wilson testified in his deposition, his statements about the condition of the floor were made on the same day that he became aware of such conditions; that preparing service requests for Service Channel, their third party-provider, was part of a regular process for dealing with maintenance issues; and that the record of Mr. Wilson's statements was made as part of the regular practice of submitting service requests. Wilson Dep. Tr. 54:25-58:18.

5

FRE 803(1) also allows hearsay evidence to be admitted if it is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Thus, because Mr. Wilson's statements about the condition of the floor in Work Order No. 1 were made on the same day that he perceived them, they would be admissible as present sense impressions. Wilson Dep. Tr. 63:18-25, 65:6-66:11.

C. Work Order No 1 is Otherwise Admissible

  i.  Work Order No. 1 is Relevant

Work Order No. 1 is not hearsay (or subject to a hearsay exception), and therefore, it should be admissible under FRE 402 because it is relevant within the meaning of FRE 401. Work Order No. 1 tends to make the following consequential facts more probable:

- That defects existed in the floor prior to Dr. Haysbert's slip and fall;
- That defendants had knowledge of such defects prior to Dr. Haysbert's slip and fall;
- That a number of other people had slipped and fallen on the floor before Dr. Haysbert did;
- That defendants had knowledge of such prior slips and falls;
- That repairing or replacing the defective floor was a feasible measure.

Defendants may argue that Work Order No. 1 is not relevant because, notwithstanding the fact that the work order itself identifies the area of concern as the "[f]loor up front," Mr. Wilson allegedly meant only a portion of the floor "[u]p front, near the front door." *See* Wilson Dep. Tr. 96:20-97:15.

This argument is unavailing for multiple reasons. First, FRE 401's "basic standard of relevance … is a liberal one." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993); see also FRE 401 (evidence is relevant if "it has *any tendency* to make a fact [of consequence to the action] more or less probable than it would be without the evidence") (emphasis added). Evidence need not be definitive proof of a fact in order to be relevant, nor

does a disagreement over the meaning of evidence or its implications render it irrelevant. Second, there is nothing in Work Order No. 1 indicating that "[f]loor up front" actually refers to a smaller area than the plain meaning of that phrase would indicate. Third, Mr. Wilson's testimony cannot be used to prove the contents of Work Order No. 1 in the face of an original of that document. See FRE 1007 (providing that proof of the contents of a writing may only be done by testimony when the testimony is that of the opposing party). Defendants may choose to argue that Mr. Wilson did not actually mean what he wrote in the work order, but that merely presents a question of fact for the jury, not render Work Order No. 1 irrelevant. Similarly, Plaintiff should not be prevented from arguing that the document speaks for itself.  Finally, as a practical matter, at the Subject Location there is no difference between "up front" and "[u]p front, near the front door." This is because the location where Dr. Haysbert slipped and fell is, in fact, near the front door. As shown in the Architectural Floor Plans for the Subject Location, a portion of which is reproduced below, immediately inside the vestibule (*i.e.*, the front door) is an area marked "LOBBY." The most reasonable understanding of both "up front" and "[u]p front, near the front door," within the context of this particular location, would be this lobby area, as distinct from the dining and bar areas located behind and to the side of it. And, indeed, this is the area in which Dr. Haysbert slipped and fell. Within the lobby is the hostess podium. According to Dr. Haysbert, she walked up to the hostess stand to ask for directions to the bathroom, but took only one or two steps towards the bathrooms before she slipped and fell. Deposition of JoAnne Wright Haysbert, Tr. 118:7-20.[3] Thus, even if Work Order No. 1's reference to the floor "up

---

[3] From context, Mr. Wilson—with many years of experience in the restaurant industry—may have simply been clarifying that "up front" did not refer to the entire "front of the house," which refers to the entire customer-facing portion of a restaurant. Wilson Dep. Tr. 82:22-25, 91:9-92:23 . Such a clarification would not affect the relevance of Work Order No. 1 because the location where Dr. Haysbert slipped and fell would be in the portion of the front of house that is "near the front door."

front" actually meant "near the front door," Work Order No. 1 is relevant because the incident at issue occurred in the Subject Location's lobby area which is both up front and near the front door.

### ii. Work Order No. 1 is Not Prejudicial

Defendants have argued, however, that Work Order No. 1 should nevertheless be excluded under FRE 403 because it would allegedly be "substantially more prejudicial than it is probative." Def's SRM Brf. 2-3. They argued that the fact that the floor was subsequently replaced in December 2018 is sufficient to prove the feasibility of doing so and, consequently, introducing Work Order No. 1 into evidence would "create undue prejudice and jury confusion," although they do not explain why it would do so. Def's SRM Brf. 3.  Plaintiff sees no reason why admitting Work Order No. 1 would cause "unfair prejudice" or "confus[e] the issues." And, moreover, as just explained, Work Order No. 1 is relevant not only to the question of feasibility, but to the existence of a defect, the tendency of that defect to cause people to slip and fall, and Defendants' knowledge of the foregoing.

Defendants have also argued that Work Order No. 1 is irrelevant because it indicates a concern for condensation and Dr. Haysbert did not testify that she saw any water or moisture on the floor. *See* Def's SRM Brf. 3. This is unsurprising, of course, because it is unlikely that Dr. Haysbert would have stepped on a wet spot had she seen it.  Defendants acknowledge, however, that Ms. Nineveh Haysbert testified to seeing someone dry-mop the floor. Def's SRM Brf. 3. This testimony is sufficient to allow a jury to infer that there was something wet to mop up from the floor. And, because there is evidence of moisture on the floor, evidence of Defendants' knowledge that condensation would form on the floor is not prejudicial or confusing.

WHEREFORE, all of the foregoing reasons and for such reasons as may be articulated during oral argument, Plaintiff, by counsel, respectfully requests that this Court admit Work Order No. 1 into evidence, and for such further relief as is necessary and proper.

Respectfully submitted,

Date: December 16, 2024        By:        _____/s/_____
                                          Mary T. Morgan, Esq.
                                          Virginia State Bar No. 44955
                                          *Counsel for Plaintiff*
                                          PARKER POLLARD WILTON & PEADEN
                                          4646 Princess Anne Road, Unit 104
                                          Virginia Beach, Virginia 23462
                                          Telephone: (757) 384-3166
                                          Facsimile: (866) 212-1310
                                          Email: mmorgan@parkerpollard.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of December 2024, I will electronically file the foregoing with the Clerk of Court using the CM/EMF system, which will send a notification of such filing (NEF) to all counsel of record, including:

John D. McGavin, Esq.
Emily Blake, Esq.
MCGAVIN, BOYCE, BARDOT,
THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
jmcgavin@mbbtklaw.com
*Counsel for Defendants*

_____/s/_____
Mary T. Morgan, Esq.
Virginia State Bar No:. 44955
Trevor B. Reid, Esq.
Virginia State Bar No:. 77233
*Counsel for Plaintiff*
PARKER POLLARD WILTON & PEADEN
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
Telephone: (757) 384-3166
Facsimile: (866) 212-1310
Email: mmorgan@parkerpollard.com
Email: treid@parkerpollard.com