UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

**JOANN WRIGHT HAYSBERT,**

        **Plaintiff,**

v.                                                                              Civil Action No.: 4:24-CV-87

**OUTBACK STEAKHOUSE OF
FLORIDA, LLC, AND
BLOOMIN' BRANDS, INC. et al.,**

        **Defendants.**

**PLAINTIFF'S UPDATED PRETRIAL BRIEF IN SUPPORT OF
ADMITTING WORK ORDER NO. 2 INTO EVIDENCE**

COMES NOW, Plaintiff, JoAnn Wright Haysbert by counsel, and submits this updated pretrial brief in support of admitting Work Order No. 103519732, created August 27, 2018, requesting floor repair to the Subject Location ("Work Order No. 2") into evidence, and in support thereof, states as follows:

    **I.**    **FACTUAL BACKGROUND**

In the summer of 2020, Plaintiff propounded written discovery on Defendants in the form of Interrogatories, Requests for Production, and Requests for Admissions. Defendants' objections were due on August 31, 2020. E.D. Va. Local Rule 26(C). Defendants' responses were due on September 14, 2021. Following Plaintiff's meet and confer efforts, having received no discovery responses, Defendants finally served responses to the aforementioned discovery requests on October 30, 2020. The responses were limited. Concerned that Defendants were withholding documents and responses to interrogatories based on boilerplate and unsupported objections, Plaintiff filed a Motion to Compel [Dkt. 41]. A hearing on Plaintiff's Motion was held on March 30, 2021 and, at the hearing, the Court granted the Motion in part and denied it in part, directing

additional production as set forth on the record. On June 2, 2021, Defendants produced Work Order No. 95465523, created March 7, 2018 ("Work Order No. 1"), as part of Defendants' Answers to Plaintiff's Request for Production of Documents. Work Order No. 1 requests floor repair to the Subject Location and states that there have been, "lots of slip and falls."

On August 1, 2023, a Final Status Conference was held in this matter. That same day, Plaintiff received an updated response to a subpoena from Service Channel, the third party used by Defendants to keep track of the work orders for the Subject Location. This production included Work Order No. 2 for repairs to the floor at the Chesapeake Outback. Under the heading "PROBLEM DESCRIPTION," this work order stated that "our floors are so bad. People are tripping. There's mold. There's warping. They're getting mworse [sic] every minute of every hour. I need them fixed now." Work Order No. 2 was clearly responsive to Plaintiff's initial discovery, to which responses were due by September 14, 2021. Specifically, Work Order No. 2 should have been identified in response to Special Interrogatory No. 21, which instructed Defendants to "[d]escribe all remedial measures taken to repair, remedy or correct the Condition [defined as 'the state of the floor … at the Subject Location where the Incident occurred'] after the Incident" because it was an order from August 2018 for repairs to the floor which were completed around December 2019. And, having been identified in response to Special Interrogatory No. 21, Work Order No. 2 should have been produced in response to Request for Production No. 1, which sought "All Documents identified in Your responses to Plaintiff's Written Interrogatories."

At the first trial, Defendants objected to any reference to the subject of Work Order No. 2. Day 4 Tr. 694:4-9 [ECF No. 307]. At the request of the Court, Day 4 Tr. 696:14-2 [ECF. No.

2

307], on August 13, 2021, Plaintiff and Defendants both filed trial briefs on the admissibility of Work Orders Nos. 1 and 2 under FRE 407. [ECF Nos. 300, 301].

## II.  ARGUMENT

### A. *Work Order No. 2 Should Be Added to Plaintiff's Exhibit List Because Its Absence Therefrom is the Fault of Defendants*

As explained above, although Work Order No. 2 was responsive to discovery requests, it was never produced by Defendants. Instead, Plaintiff only received a copy of Work Order No. 2 from Service Channel, Defendants' maintenance management vendor, in response to a subpoena for document production. Plaintiff did not receive Work Order No. 2, however, until 5:13 p.m. EDT on August 1, 2023, the same day as the Final Status Conference before the first trial. Had Work Order No. 2 been produced as required within the time frame for discovery, Plaintiff would have designated it as an exhibit. Yet, because Defendants withheld Work Order No. 2, Plaintiff did not have the opportunity to include it on her exhibit list, which had been finalized earlier that same day at the Final Status Conference. (Plaintiff was also denied the opportunity to depose parties with knowledge of Work Order No. 2 or its subject matter, as depositions had concluded by that time and discovery deadlines had passed.)

In its Scheduling Order of September 23, 2024, the Court adopted the final exhibit and witness lists memorialized in the Court's Order of August 2, 2023 [ECF No. 273], except for any exhibits or witnesses that the parties may choose to remove. Nevertheless, so as to ensure that Defendants do not benefit from their misconduct and that Plaintiff is not prejudiced thereby, Plaintiff requests the Court's permission to add Work Order No. 2 to her exhibit list. Because the decision to retain the preexisting final witness list was an exercise of the Court's "inherent powers … 'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases,'" Dietz v. Bouldin, 136 S. Ct. 1885, 1891 (2016) (quoting Link v. Wabash R. Co., 370

3

U.S. 626, 630-631 (1962)), it is within the Court's discretion to permit Plaintiff to add Work Order No. 2 to her exhibit list.

   B. *Work Order No. 2 Falls Within the Exceptions to FRE 407 Regarding Subsequent Remedial Measures for Impeachment Evidence and Evidence Proving Ownership or Control*

Plaintiff acknowledges that Work Order No. 2 is a subsequent remedial measure within the meaning of FRE 407. Nevertheless, it is admissible under the exceptions to that rule for impeachment evidence and evidence proving ownership or control.

With respect to impeachment, Ms. Alicia Eleftherion, who was manager of the Chesapeake Outback location at the time and whose cell phone number appears as the contact information for the person who originated the work order, testified that the floors were replaced around December 2018 for aesthetic reasons. Day 4 Tr. 72:1-73:5. Mr. Nick Siefert, Joint Venture Partner of Outback Steakhouses in the Hampton Roads and Richmond areas and who is identified in Work Order No. 2 as having been involved in the floor replacement process, testified at his deposition that the floors were replaced because of a damage from a water leak that had been discovered in the area of the soda machine around the time that Work Order No. 2 was submitted in August 2018. Deposition of Nicholas Siefert Tr. 216:1-217:21. Yet, Work Order No. 2 tells a different story, referring instead to warping and mold, as well as noting that "[p]eople are tripping," with no mention of a water leak or a soda machine.

Beyond direct impeachment, evidence of subsequent remedial measures may be offered to rebut a defendant's claims that no defective condition existed.[1] If the defendant has raised the question of ... the nature of the condition at the time of the accident, then evidence of subsequent remedial measure is admissible not only for the limited purpose of impeachment but also as

---

[1] *See also* § III(C), *infra*.

affirmative proof to rebut defendant's claims. In such circumstances, it would be manifestly unjust to deny plaintiff the right to elicit such evidence by cross-examination or by direct proof. 2 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE § 407[04] (1976) (quoted approvingly in Patrick v. South Central Bell Tel. Co., 641 F. 2d 1192, 1197-98 (6th Cir. 1980)).

Defendants' actions illustrate the reason why this sort of impeachment evidence is important. On one hand, Defendants claim that there was no defect at all with the subject flooring, but even so, they want to bring in evidence of that the floor was replaced due to a soda leak to demonstrate the lack of a defect at the time of Plaintiff's slip and fall.[2] Yet, on the other hand, Defendants contend that Plaintiff should not be able to introduce their own evidence about the same measure through the actual work order, which indicates that the floor had to be replaced because of people "tripping." Defendants cannot benefit from introducing evidence, and also attempt to preclude Plaintiff from introducing evidence on the same subject.

Work Order No. 2 is also admissible under the exception to FRE 407 for evidence proving ownership or control. Defendants have repeatedly taken the position that Defendant Bloomin' Brands had no knowledge of the condition of the floor at issue and were not involved in any remediation thereof. According to Work Order No. 2, however, Bloomin' Brands was highly involved in controlling and overseeing the work of replacing the floor. Bloomin' Brands is mentioned twenty-six times in Work Order No. 2, by way of notes input into the system and emails regarding the replacement of the floors. For example, in Note 14, dated November 14, 2008, Kim Graeff at Bloomin' Brands Inc. approves the proposal from Tamerlane Commercial

---

[2] For example, at the first trial, Defendants freely chose to inform the jury of both work orders in their opening statement. Counsel for Defendants informed the jury of a "work order," *i.e.*, Work Order No. 1, and "that several months later a soda machine burst and broke and flooded the restaurant, and that subsequent to that, the entire floor for the entire restaurant was replaced," referring to the work performed as a result of Work Order No. 2. *See, e.g.*, Day 2 Tr. 10:11-22 [Dkt. 291].

5

Flooring for the floors to be replaced. Because Work Order No. 2 is clear evidence of ownership or control by Defendant Bloomin' Brands it is admissible for that purpose, notwithstanding FRE 407.

    C. *Work Order No. 2 is Not Inadmissible Hearsay*

Defendants have asserted that Work Order No. 2 is "double hearsay," Def's SRM Brf. 3, and thus inadmissible. However, neither Work Order No. 2 nor the statements contained within it are hearsay within the meaning of FRE 801 because they are opposing-party statements. Furthermore, even if they are deemed to be hearsay, they are nevertheless admissible because they fall within the exception in FRE 803(1) for present sense impressions or FRE 803(6) for records of a regularly conducted activity (*i.e.*, the business record exception).

        i.    Neither Work Order No. 2 nor the statements contained therein are hearsay because they are statements of an opposing party under FRE 801(d)(2)(C) and (D).

FRE 801(d)(2) provides in relevant part that a statement is not hearsay when it is "offered against an opposing party" and:

> *(C) was made by a person whom the party authorized to make a statement on the subject;*
>
> *(D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or....*[3]

As the Advisory Committee Notes on Proposed FRE 801 explain, "Admissions by a party-opponent are excluded from the category of hearsay on the theory that their admissibility in evidence is the result of the adversary system rather than satisfaction of the conditions of the hearsay rule."

---

[3] The use of "or" at the end of clause (D) indicates that a statement is not hearsay if it falls under *either* clause (C) or (D).

Specifically, Work Order No. 2 and the statements contained in it are excluded from the definition of hearsay because they are an opposing party's statements within the meaning of FRE 801(d)(2)(C) or (D) because they is being offered by Dr. Haysbert, the plaintiff, against Defendants and were made by a person authorized to make statements on the subject or by a party's agent or employee within the scope of that employment.[4]

      ii.      Work Order No. 2 falls within the exceptions to the rule against hearsay for business records and present sense impressions.

FRE 803(6) allows hearsay evidence to be admitted if it constitutes "[a] record of an act, event, condition, opinion, or diagnosis" and the following conditions are met:

> *(A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;*
>
> *(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;*
>
> *(C) making the record was a regular practice of that activity;*
>
> *(D) all these conditions are shown by the testimony of the custodian or another qualified witness…; and*
>
> *(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.*

Based the deposition testimony of Mr. Marcus Wilson who prepared and submitted Work Order No. 1, it should be understood that work orders and the statements they contain are made by someone with knowledge of the relevant condition around the time that such condition existed; that preparing service requests for Service Channel, their third party-provider, was part of a regular process for dealing with maintenance issues; and that the statements in a work order

---

[4] Because Defendants failed to produce Work Order No. 2 and denied Plaintiff the opportunity to depose witnesses about it, Plaintiff has not definitively established who authored the work order, although it appears most likely to have been Ms. Eleftherion based on the inclusion of her cell phone number as the contact. Regardless, it could only have been an employee or agent authorized to submit work orders or else the work order would never have been approved and acted upon.

7

are made as part of the regular practice of submitting service requests. See Deposition of Marcus Wilson, Tr. 54:25-58:18.

FRE 803(1) also allows hearsay evidence to be admitted if it is "[a] statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Thus, because the statements in Work Order No. 2 about the condition of the floor were self-evidently made at or immediately thereafter perceiving those conditions, they would be admissible as present sense impressions.

    D.    *Work Order No. 2 is Otherwise Admissible*

Work Order No. 2 should be admissible under FRE 402 because it is relevant within the meaning of FRE 401. This is because Work Order No. 2 tends to make the following consequential facts more probable:

- That defects in the floor, including warping and mold, existed prior to August 27, 2018, a few months after Dr. Haysbert's slip and fall;
- That the defects had been getting worse and causing people to trip;
- That Defendants replaced the floor around December 2019, rendering it unavailable for Plaintiff's experts to examine;
- That Bloomin' Brands exercised control over the project, including by the involvement of its employees in selecting the contractor, managing the project, and approving the project and payment.
- That replacing the defective floor was a feasible measure.

Defendants have argued, however, that Work Order No. 1 should nevertheless be excluded under FRE 403 because it would allegedly be "more prejudicial than it is probative." Def's SRM Brf. 3-4. This is because, in Defendants' view, the replacement of the floor was due to damage from an issue with the soda machine that only arose in August 2018, after Dr. Haysbert's slip and fall. See Def's SRM Brf. 1-3.  While Defendants want to suggest that this leak was a discrete "incident" or "failure," Def's SRM Brf. 2-3, as if someone had discovered pools of water on the floor, their witnesses tell a different story - that there had been an ongoing

8

leak for some unidentified amount of time prior to August 2018. As Mr. Siefert testified during his deposition, the leak was only discovered because the condition of the floor had been getting worse and, therefore, "[they] had somebody look at the floor to see what the issue was, and I think that's how they found out, you know, trying to figure out what the issue with that part of the floor was…" Deposition of Nicholas Siefert Tr. 216:19-24.

Because Defendants' cannot establish when this leak started or that the poor condition of the floor was wholly attributable to the leak, they should not be allowed to exclude Work Order No. 2 from evidence simply because there is a disagreement over its implications for the case.

WHEREFORE, all of the foregoing reasons and for such reasons as may be articulated during oral argument, Plaintiff, by counsel, respectfully requests that this Court admit Work Order No. 2 into evidence, and for such further relief as is necessary and proper.

                                        Respectfully submitted,

Date: December 16, 2024        By:    _____/s/_____
                                                  Mary T. Morgan, Esq.
                                                  Virginia State Bar No. 44955
                                                  *Counsel for Plaintiff*
                                                  PARKER POLLARD WILTON & PEADEN
                                                  4646 Princess Anne Road, Unit 104
                                                  Virginia Beach, Virginia 23462
                                                  Telephone: (757) 384-3166
                                                  Facsimile: (866) 212-1310
                                                  Email: mmorgan@parkerpollard.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of December 2024, I will electronically file the foregoing with the Clerk of Court using the CM/EMF system, which will send a notification of such filing (NEF) to all counsel of record, including:

John D. McGavin, Esq.
Emily Blake, Esq.
MCGAVIN, BOYCE, BARDOT,
THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
jmcgavin@mbbtklaw.com
*Counsel for Defendants*

_____/s/_____
Mary T. Morgan, Esq.
Virginia State Bar No:. 44955
Trevor B. Reid, Esq.
Virginia State Bar No:. 77233
*Counsel for Plaintiff*
PARKER POLLARD WILTON & PEADEN
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
Telephone: (757) 384-3166
Facsimile: (866) 212-1310
Email: mmorgan@parkerpollard.com
Email: treid@parkerpollard.com