IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| JOANN WRIGHT HAYSBERT | ) | |
|     Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BLOOMIN' BRANDS, INC., et al. | ) | Case No.: 4:24-cv-00087-EWH-RJK |
| | ) | |
|     Defendants. | ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTIONS *IN LIMINE*

COMES NOW, that the Defendants, Outback Steakhouse of Florida, LLC and Bloomin' Brands, Inc., by counsel, and in support of its Motions *in Limine*, state as follows:

1. <u>Motion to Exclude Evidence of Corporate Indifference; "Did anyone [from Outback] follow up with Dr. Haysbert" after the slip and fall.</u>

Whether any Outback employee, Bloomin' Brands employee, or employee of any claims/insurance company on behalf of Defendants called Plaintiff after the slip and fall on May 23, 2018 is simply not relevant under Federal Rule of Evidence 401 and is inadmissible pursuant to Federal Rule of Evidence 402 and, in the alternative, 403. Plaintiff's counsel indicates that the question is relevant to the theme of 'corporate indifference,' however 'corporate indifference' is not an element of negligence, nor is it a fact "of consequence in determining the action," Fed. R. Evid. 401, especially as there is no claim for punitive damages. While the Defendants are corporations, Joint Jury Instruction 33 clearly instructs: "A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, and other organizations stand equal before the law, and are to be treated as equals." A corporation cannot be 'indifferent' more or less than any other individual. Plaintiff is seeking to utilize Defendants' corporate status to seek

1

to 'dehumanize' Defendants in the eyes of the jury. Such trial themes and questions are unduly prejudicial and such prejudice substantially outweighs any possible relevance.

    2.    <u>Motion to Exclude the March 7, 2018 Work Order, P14.</u>

Defendants objected to Plaintiff's attempt to introduce the March 7, 2018 work order through Nicholas Seifert, as the document was not authored by Mr. Seifert and he had no knowledge of the creation of the document or the statements contained therein. *See* ECF 301 p. 2. Plaintiff's counsel argued that the March 7, 2018 work order was admissible through Mr. Seifert as evidence of "feasibility of precautionary measures." *Id.*; *see also* ECF 320, Trial Trans. Day 4 774:5-13 ("Your Honor, this goes directly to the feasibility of precautionary measures."). Thus, Defendants were simply responding to Plaintiff's arguments at trial. Defendants have always maintained that the March 7, 2018 work order was not admissible pursuant to Federal Rules of Evidence 402 and 403. ECF 273 p. 7.

When counsel for the parties met and conferred on this Work Order, undersigned was simply told that she would have to renew her prior motion (ECF 301) on this topic, as Plaintiff would not consent that the work order is inadmissible. Now, according to ECF 28, Plaintiff is arguing that she never intended to use the work order to prove feasibility of precautionary measures and, instead, the work order is simply relevant and arguing that Marcus Wilson, the actual author of the work order, clearly lied in his deposition when discussing the scope of the work order. ECF 28 pp. 6-7. *But see* ECF 28 p. 6 (listing that the work order is relevant to prove "[t]hat repairing or replacing the defective floor was a feasible measure.").[1]

---

[1] To the extent that Plaintiff seeks to introduce the March 7, 2018 work order as 'proof of a feasible measure,' Defendants adopt and incorporate the arguments previously made in ECF 301.

2

Plaintiff's counsel's arguments aside, Plaintiff has *no evidence* that Mr. Wilson intended to indicate that that there was any problem with the floors in the area where Plaintiff actually slipped and fell. <u>Exhibit C</u>, Marcus Wilson Dep. Plaintiff's brief on this topic offers no proffer of evidence, other than counsel's conjecture and argument that Mr. Wilson's description was not specific enough to the location that Mr. Wilson was intending to describe. Plaintiff's brief even goes so far as to assume that Mr. Wilson, as a seasoned restaurant employee, "may have simply been clarifying that 'up front' did not refer to the entire 'front of house.'" ECF 28, p. 7 n. 3. Plaintiff's counsel's musings are nothing more than pure conjecture in the face of *detailed* and *extensive* deposition testimony from Mr. Wilson. *See generally* Ex. C.

The work order specifically states that "[w]hen temperature changes outside it tends to collect moisture and sweat." Ex. A. Plaintiff has already testified at trial:

- "[I]t was a beautiful day." ECF 319, 312:23-25.

- It did not rain. ECF 319, 313:1-8.

- Plaintiff did not notice anything about the condition of the floor before she stepped past the hostess stand. ECF 319, 314:21-25.

- Plaintiff did not inspect the floor after she fell, nor did she look to see what caused her to fall. ECF 319, 327:11-328:4.

- Plaintiff did not notice whether any of her clothes were wet after the fall. ECF 319, 321:6-18.

- When Plaintiff got up and walked out of the restaurant, she walked out the same way she walked in and did not have any difficulty with the floor. ECF 319, 325:10-326:6.

While Plaintiff's daughter, Nineveh Haysbert, testified that she saw an employee with a dry mop near her mother when she walked into the restaurant, ECF 320, 567:24-270:8, Nineveh

Haysbert could not determine if the floor was wet, did not have any difficulty walking on the area where her mother fell, specifically testified that the floor was not slippery, and did not notice whether her mother's clothes were wet after the fall, ECF 320, 571:2-25; 572:18-573:16.

Independent Witness, Christopher Robinson, testified the floor was not wet and he did not see anyone else having any difficulty with the floor prior to Plaintiff falling. ECF 320, 734:24-735:22. Mr. Robinson specifically looked to see if there was something on the floor that Plaintiff fell on, but did not see anything. ECF 320, 737:8-12.

There are similarly no photos or any other document to substantiate that the floors were wet on May 23, 2018, nor is there any evidence that there was the 'temperature change' as Mr. Wilson describes in the work order.

Simply put, Plaintiff has absolutely no physical or testimonial evidence that the floors were wet and apparently intends to rely upon mere conjecture that the issue Mr. Wilson described in his March 7, 2018 Work Order was somehow related to Plaintiff's fall. However, Dr. Haysbert's statements of fact are binding upon her and she cannot raise above her own testimony. *Massie v. Firmstone*, 134 Va. 450, 462 (1922). The fact that this work order existed prior to Plaintiff's fall does not mean that the issue described in the work order was present on the day Plaintiff fell. It is Plaintiff's burden to provide this Court with evidence of negligence; "[n]egligence cannot be presumed from the mere happening of an accident." *Weddle v. Draper*, 204 Va. 319, 323 (1963). Rather, "[i]t is incumbent on the plaintiff who alleges negligence to show why and how the accident happened, and if that is left to conjecture, guess or random judgment, [s]he cannot recover." *Id.* (citations omitted).

While the above case law is whether a plaintiff has sufficient proved her case, as opposed to the admissibility of evidence, it is still probative because it goes to what a plaintiff has to prove

4

in meeting her burden. The Notes of the Advisory Committee on Federal Rule of Evidence 401 are also instructive as it discusses 'conditional' relevancy:

> In this situation, probative value depends not only upon satisfying the basic requirement of relevancy as described above but also upon the existence of some matter of fact. For example, if evidence of a spoken statement is relied upon to prove notice, probative value is lacking unless the person sought to be charged heard the statement.

Fed. R. Evid. 401 advisory committee's note; *see also* Fed. R. Evid. 104(b) ("When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."). Here, Plaintiff has failed to proffer the existence of the facts that would make the March 7, 2018 work order relevant, namely that there was any moisture on the floor or that there was the temperature change, as detailed in the work order. Rather, Plaintiff is clearly attempting to use the March 7, 2018 work order *to prove* that the floor was wet on the date she fell. This is improper. Thus, the March 7, 2018 work order is inadmissible as Plaintiff has failed to proffer how it is relevant under Federal Rule of Evidence 401 and, therefore, is inadmissible pursuant to Federal Rule of Evidence 402.

In the alternative, the March 7, 2018 work order is substantially more prejudicial than it is probative as, at most, Plaintiff's evidence amounts testimony from her daughter (which is contradicted by Mr. Robinson) that an employee was dry-mopping around the area where Plaintiff fell. Even if this could be used as circumstantial evidence to prove that the floor was wet, it does not tend to prove that the floor was wet due to "temperature changes outside . . . ." Ex. A. As, during the last trial, Plaintiff had no evidence related to the weather and, in her motion, Plaintiff has failed to proffer that she will have any admissible evidence as to the weather in the new trial, admitting the work order would be unduly prejudicial, pursuant to Federal Rule of Evidence 403.

As to Plaintiff's arguments regarding to hearsay, Plaintiff has never laid the foundation at trial to establish that all of the statements contained with the March 7, 2018 work order were made "by a person whom [Defendants] authorized to make a statement on the subject" or that the statement were made by Defendants' "agent or employee within the scope of that relationship and while it existed." While Plaintiff may argue that she can lay sufficient foundation to prove the March 7, 2018 work order is not double hearsay, she has yet to do that at trial. Lastly, simply because a document is not hearsay, does not make it admissible. Plaintiff still must pass the other evidentiary hurdles to admit the March 7, 2018 work order into evidence.

3. <u>Motion to Exclude the August 27, 2018 Work Order, not listed as an exhibit.</u>

   a. *Plaintiff's Procedural Arguments as to Why she Should be Permitted to Designate this Exhibit Late are Factually Flawed and Unsupported by the Record.*

Plaintiff admits that she received the August 27, 2018 work order in response to a subpoena, but did not produce the document or otherwise notify the court or the Defendants of its existence until Day 4 of trial on August 11, 2023. Undersigned could not locate her copy of the document, conceivably provided at trial, and a copy of the document was not attached to Plaintiff's motion or the prior motion, ECF 300.

Plaintiff's arguments that the work order should have been produced in discovery is confusing, especially as none of the discovery requests are set forth in full, nor are they attached to the motion. Plaintiff's motion references a hearing on March 30, 2021, ECF 57, but the Court's notes does not reflect the rulings and Plaintiff's brief does not set forth any rulings made by Judge Miller.

As many years have passed since this March 30, 2021 hearing, and Plaintiff did not file a subsequent motion for sanctions for failure to comply with any ruling made at the March 30, 2021

6

hearing (or at least it is not detailed in this brief and undersigned has no knowledge of one), undersigned expects that counsel for Defendant complied with any rulings made during the March 30, 2021 hearing. Plaintiff argues in her brief that the August 27, 2018 work order should have been identified in response to Interrogatory 21 and produced in response to Request for Production 1. Plaintiff's brief sets forth Interrogatory 21, which is a very limited interrogatory. Plaintiff only asked Defendant to "[d]escribe all remedial measures taken to repair, remedy, or correct *the Condition* after the Incident." Defendant Outback responded "Objection, relevance regarding subsequent remedial measures alleged, although as there was no defect, no subsequent remedial measures were indicated." As Defendant Outback has always contended that the floor did not have a defect at the time Plaintiff fell, it is unclear how the August 27, 2018 work order was relevant in response to Interrogatory 21.

Plaintiff did file the transcript from the March 30, 2021 hearing, docketed at ECF 65-1, wherein Plaintiff noted objections to Judge Miller's rulings on March 30, 2021. Judge Miller stated that he was confused by Plaintiff's use of the word 'condition' in Plaintiff's discovery request, ECF 65-1, 66:367:1. Ultimately, Judge Miller recognized that because Plaintiff had failed to allege or identify what, exactly, the defective condition she alleged caused her fall, it was difficult for Defendants to respond to these discovery requests. ECF 65-1, 66:367:1, 70:11-71:10. Defendants were then ordered to provide information related to *prior* slips and falls. ECF 65-1, 70:11-71:10. Undersigned cannot identify any portion where Interrogatory 21 was ever actually discussed, nor was it identified in Plaintiff's motion who is seeking for leave to add a new exhibit. Thus, Plaintiff has failed to substantiate her allegation that Defendants' misconduct prohibited her from discovering this subsequent work order and the August 27, 2018 work order should be excluded, as it was not timely designated.

7

Plaintiff also does not identify when this subpoena *duces tecum* to Service Channel was issued, nor does the motion provide any facts to substantiate a finding that the subpoena complies with the Court's scheduling order. It is unclear from Plaintiff's motion why Plaintiff received the subpoena response so late. Discovery had been closed for over a year by the time Plaintiff received the subpoena response on August 1, 2023, as the case had originally been set for trial in August 2022.

A fair reading of defense counsel's opening does not, in fact, reference two work orders. It references the one work order that was known (and referenced in Plaintiff's opening), ECF 318 252:18-253:2, and a reference as to the testimony that had been elicited in discovery depositions – that the floors were never replaced as a result of the condensation issue or any issue raised by Plaintiff – that several months after Plaintiff's slip and fall, it was discovered that a soda machine burst. ECF 253:3-7. This was thoroughly discussed in Mr. Seifert's deposition:

> 15 What was the water leaking happening
>
> 16 from, where was it coming from?
>
> 17 A I believe it was something related to
>
> 18 the soda station in the kitchen.

Exhibit D, Seifert Dep. 217:15-18; *see also* Ex. C, Wilson Dep. 80:3-22; 125:16-127:1.

### b. *This Work Order does Not Fall under the Rule 407 Exceptions*

Plaintiff now argues that the Work Order can be used to prove ownership or control, however Defendant Outback has never contended it did not own or control the premises. In the meet and confers undersigned had with Counsel for Plaintiff, she indicated that she 'had no problem' with dismissing Defendant Bloomin' Brands as soon as undersigned can produce information related to Defendant Outback's ability to pay whatever verdict, if any, is awarded to

8

Plaintiff. Thus, undersigned was completely surprised by this argument that the work order would be used to show Bloomin' Brands ownership or control, when all discussions between counsel have pointed to an agreement to have Bloomin' Brands dismissed as a party. Undersigned cannot assess the rest of the arguments related to notice and control as the work order was not attached to the motion and does not seem to be have been filed with the Court.

Plaintiff argues that this work order impeaches Ms. Eleftherion, however absolutely no foundation has been laid that Ms. Eleftherion had any knowledge of this work order. Rather, Plaintiff relies upon the assumption that simply because Ms. Eleftherion's phone number is on the work order, she must have drafted it. No foundation has been laid for this assumption, other than Mr. Wilson's testimony that a work order is placed through an app on his phone, called Service Channel. Ex. C, Wilson Dep. 37:17-23. Otherwise, there is no evidence, as far as undersigned can tell without having the opportunity to review the document again, that Ms. Eleftherion had any knowledge of this work order. Therefore, it is too premature to argue that this work order can be used to impeach Ms. Eleftherion.

Lastly, Plaintiff argues that the August 27, 2018 work order can be used to show that Defendants had knowledge that a defective condition existed. However, the only 'defective condition' that Defendants can have notice of, based on this work order, is warped floors, which, as evidenced by the deposition testimony cited above, was as a result of a soda machine leak that occurred after Plaintiff's slip and fall. Plaintiff's own argument evidence how Plaintiff is constantly shifting what this supposed defective condition was that caused Plaintiff to slip and fall. The two work orders very clearly identify two very different problems. Plaintiff cannot rely upon both to prove a defective condition existed; it is Plaintiff's burden to present evidence that Plaintiff slipped as a result of a *particular* defective condition, of which Defendants had notice.

### c. *Plaintiff Cannot Prove this Work Order is Relevant*

Regardless, for similar reasons articulated above, it is unclear how the August 27, 2018 work order could possibly be relevant, as it discusses people *tripping* due to a *warped* floor. ECF ECF 29 p. 2. Plaintiff has repeated testified and alleged in her Complaint that she *slipped*. ECF 1, Compl. ¶¶ 10, 30; *see also* Compl. ¶ 23 (describing the floor as slippery); ¶¶ 26, 28 (arguing Defendants should use precautionary measures to prevent slipping). Plaintiff further alleges in her Complaint that "Defendants were on notice of the unsafe or dangerous condition of the Chesapeake Outback's floor prior to Dr. Haysbert's slip and fall because they had been informed by a manager on or about March 7, 2018 that the floor tended to collect moisture when the temperature outside changed and therefore needed to be replaced." ECF 1, Compl. ¶ 12.

Absolutely no one has testified that the soda machine leak caused pools of water to form or that people slipped as a result of the soda machine leak. Mr. Wilson's understanding of the leak was that the soda machine "exploded in between the walls, which leaked into the floor, which buckled the floor . . . [t]he floor closest to the kitchen." Ex. C., Wilson Dep. 126:4-127:1. Thus, the August 27, 2018 work order is inadmissible as Plaintiff has failed to proffer how it is relevant under Federal Rule of Evidence 401 and, therefore, is inadmissible pursuant to Federal Rule of Evidence 402.

In the alternative, the August 27, 2018 work order is substantially more prejudicial than it is probative as it would confuse the jury. There are clearly two separate issues identified by these work orders. There is no evidence that Plaintiff tripped due to floors warping. Plaintiff has no evidence to substantiate her attorney's assertion that the soda machine leak (that was leaking in the walls), caused the floor to buckle in the area where Plaintiff *slipped,* thereby causing Plaintiff

10

to slip. Thus, the probative value of the August 27, 2018 work order is substantially outweighed by the prejudice to Defendants and confusion of the issues.

### d. *Plaintiff Has Not Laid Any Foundation to Argue Hearsay Exception Applies*

Plaintiff has cited no testimony or evidence that would substantiate an argument that any hearsay exception applies to this document. Without this foundation, this Court cannot making a ruling based on the current record.

### 4. Motion to Exclude Internal Policies.

As indicated in the Motion, Counsel have almost resolved this issue and hope to have it completely resolved by the time this Court rules on these motions. Therefore, as permitted by this Court's Scheduling Order (ECF 22), entered September 23, 2024, Defendants intend to rely on the arguments previously submitted on this issue, as set forth in ECF 351/352.

### 5. Motion to Exclude Plaintiff's Demonstrative 1 – Brain Map Animation.

For the reasons set forth in Defendants' Motion in Limine, the Brain Map Animation should be excluded. This demonstrative was not created by counsel or by Plaintiff's experts. It was not produced in discovery and it was not even provided to undersigned until trial had begun. Defendants have no information about how the animation was created, other than it was created by an unnamed third-party vendor. Defendants have no assurances that this third-party vendor appropriately took the imaging created by Dr. Filler and created this animation. Plaintiff's counsel assures the Court that Dr. Filler will be "prepared to lay the necessary foundation for the animation at the upcoming trial," ECF 31 p. 3, but declines to disclose how that will be possible. Dr. Filler himself did not even want to rely upon the animation at trial, and preferred to use his actual imaging. ECF 319, 454:5-12. Further, the animation has not been identified in Plaintiff's designation for damages experts as being relied upon by either Dr. Filler or Dr. Haider. If

11

Plaintiff's own experts are content with using the images from the scan, it is unclear why Plaintiff's counsel is convinced that this demonstrative is necessary.

6. <u>Motion to Exclude Plaintiff's Demonstrative 2 – Filler PowerPoint.</u>

During the 2023 Final Pre-Trial conference, Plaintiff was ordered to provide an amended PowerPoint because Plaintiff needed to have "Dr. Filler update PPT to remove references to court rulings." ECF 273, p. 3. However, the amended proposed Exhibit 2 that was provided by Plaintiff during trial simply black-box redacted the references to prior court rulings on the Diffusion Tensor Images, but then left the caption of the PowerPoint slide in the slide deck.

Then, in the midst of Dr. Filler's direct examination, the slides were discussed in front of the jury. ECF 319, Day 3 Tr. 454:18-459:1; 466:9-18;[2] s*ee also id.* at 486:8-487:9 507:5-509:23 (referencing slides that Dr. Filler showed the jury); 489:15-23 (Judge Smith referencing that the jury has been viewing a demonstrative, which is not evidence). Judge Smith never had an opportunity to rule upon all of Defendants' objections to the various slides because Plaintiff's counsel introduced the exhibit during his direct examination of Dr. Filler, quickly publishing it to the jury, and Judge Smith wanted to move things along. *See* ECF 319, Tr. Trans. Day 3, 455:19-456:13; *see also* ECF 315 pp. 8-9.

Plaintiff's counsel has indicated that she agrees that black-box redactions are not appropriate and a clean copy of the PowerPoint will be provided, but at this point it is too late. Plaintiff was ordered to produce the PowerPoint over a year ago. If Plaintiff wanted to use Dr. Filler's PowerPoint, it should have at least been provided prior to the date of this motion, so that

---

[2] These slides were extremely prejudicial because they were referencing side effects that a person who suffers a TBI *might* experience –but there was no evidence that Dr. Haysbert had actually experienced any of these symptoms. *See* ECF 319, Day 3 Tr. 507:5-509:23.

12

this Court could have the opportunity to rule on the Exhibit in preparation for trial. Therefore, Defendants request a Court Order excluding Plaintiff's Exhibit 2.

      7.     <u>Motion to Exclude Dr. Filler.</u>

Defendants' eighth Motion *in Limine*, as set forth in ECF 351/352, requested an Order excluding the testimony of Dr. Filler. This issue was also briefed in ECF 294. As permitted by this Court's Scheduling Order (ECF 22), entered September 23, 2024, Defendants intend to rely on the arguments previously submitted on this issue, as set forth in ECF 294 and 351/352. Defendants further rely upon Dr. Filler's testimony, as provided in the prior trial, as such testimony clearly indicative of Dr. Filler's expected testimony to be offered during the trial in February 2025. *See* ECF 319, 408:10-512:15.

As discovered in the Parties' meet and confers, Plaintiff still intends to call Dr. Filler of an expert and counsel for Plaintiff indicated that Dr. Filler has even treated Plaintiff since last year's trial. However, Plaintiff has never sought to amend her designation, provide any treatment records, or provide literally any information other than a brief mention in a phone call. Therefore, Defendants' object to any facts or opinions not properly designated by Plaintiff.

      8.     <u>Motion to Request Clarification on Which Witnesses Plaintiff Actually intends on Calling at trial.</u>

The number of experts and when they may testify will impact the length of the trial. This specifically goes to the issue of Defendants' expert witnesses waiting and ultimately never being allowed to testify despite four reserved trial dates. During the meet and confers, defense sought a reasonable expectation of how long Plaintiff's case may last including, which witnesses will actually be called so that a reasonable schedule and orderly trial may occur. Counsel for Plaintiff has advised that she does not intend to call any of the liability experts and, as of right now, intends to call Dr. Haider and Dr. Filler. Plaintiff's counsel indicated that her trial strategy may change

depending on how the Court rules on Dr. Filler's admissibility. Therefore, as permitted by this Court's Scheduling Order (ECF 22), entered September 23, 2024, Defendants intend to rely on the arguments previously submitted on this issue, as set forth in ECF 351/352.

                                            **BLOOMIN' BRANDS, INC.**
                                            **and OUTBACK STEAKHOUSE**
                                            **OF FLORIDA, LLC**
                                            By Counsel

McGAVIN, BOYCE, BARDOT,
 THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:   (703) 385-1000
Facsimile:    (703) 385-1555

    /s/ *Emily K. Blake*
John D. McGavin (VSB 21794)
Emily K. Blake (VSB 90562)
jmcgavin@mbbtklaw.com
eblake@mbbtklaw.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 16, 2024 the following was e-filed and served upon counsel of record:

    Mary T. Morgan, Esq.
    PARKER POLLARD WILTON & PEADEN
    4646 Princess Anne Road, Unit 104
    Virginia Beach, Virginia 23462
    Telephone: (757) 384-3166
    Facsimile: (866) 212-1310
    Email: mmorgan@parkerpollard.com
    *Counsel for Plaintiff*

                                        /s/ *Emily K. Blake*
                                      Emily K. Blake (VSB 90562)