IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| JOANN WRIGHT HAYSBERT<br>    Plaintiff,<br>v.<br><br>BLOOMIN' BRANDS, INC., et al.<br><br>    Defendants. | )<br>)<br>)<br>)<br>)   Case No.: 4:24-cv-00087-EWH-RJK<br>)<br>) |

**DEFENDANTS' OBJECTIONS TO PLAINTIFF'S SUPPLEMENTAL EXPERT DISCLOSURES AND REQUEST FOR RELIEF, INCLUDING STRIKING PLAINTIFFS' EXPERTS**

COMES NOW, that the Defendants, Outback Steakhouse of Florida, LLC and Bloomin' Brands, Inc., by counsel, and hereby file their objections to Plaintiff's Supplemental Expert disclosures for Dr. Aaron Filler and Brad Avrit, P.E., filed January 10, 2025, and state as follows in support:

**I.**    **INTRODUCTION AND PROCEDURAL HISTORY**

In the prior case, Plaintiff's liability expert disclosures were due June 17, 2021 and her damages experts were due June 25, 2021. ECF 126, prior case; *see also* Pl.'s 2021 Expert Discl. previously provided to Court by e-mail Jan. 10, 2025. This deadline was never extended, as Plaintiff's subsequent request for an extension was denied. ECF 168, prior case (detailing all of the extensions to discovery that had been granted in the prior case). The parties went to trial in August 2023, based on the opinions set forth in Plaintiff's 2021 designations.

When Plaintiff requested a voluntary dismissal of the prior suit, the order granting the voluntary dismissal states: "The parties are therefore limited, for example, to the expert designations, reports, and opinions; witnesses; and exhibits disclosed in the instant case." ECF 357, prior case. This Order does not give Plaintiff leave to supplement expert disclosures.

1

Now, 46 days before trial, Plaintiff seeks to 'supplement' her expert disclosures for Dr. Aaron Filler and Brad Avrit, P.E. Notably, both reports contain new and additional information that completely changes the scope of the experts' opinions. Defendants object to this late 'supplemental' disclosure and move for Dr. Filler and Mr. Avrit to be struck as experts, as their testimony is tainted by the new investigation and facts they have learned. Defendants also intend to reserve the right for additional relief, as discussed below, and intended to be raised at the Pretrial Conference on January 16, 2025.

## II. DR. FILLER'S NEW OPINIONS

At the prior trial and in the motions *in limine* that have been briefed by defense counsel, it has been argued that Dr. Filler should be struck as an expert as he lacks foundation to support the opinions he intends to offer at trial. These arguments outline the deficiencies with Dr. Filler's report, including that he fails to offer an opinion as to causation, he makes no opinion as to the symptoms Plaintiff suffers, and he failed to make opinions to a reasonable degree of medical certainty, etc. *See* ECF 294, 351, 352, prior case. Notably, it is specifically argued:

> Dr. Filler does not make any opinions as to causation because he has no foundation to offer any of the above opinions. Dr. Filler never examined Plaintiff, never interviewed her, never reviewed any of her medical records, nor reviewed her deposition testimony. This is evident because if he had reviewed these materials, he would have been required to disclose them in his report pursuant to Federal Rule of Civil Procedure 26(a)(2). Dr. Filler never offered any opinions as to the symptoms that Plaintiff does allegedly suffer for the same reasons – any statements would be purely speculative and lack foundation.

ECF 294, p. 2.

On December 18, 2023, Plaintiff moved for a voluntary dismissal, representing to the court that the voluntary dismissal would not "substantially prejudice Defendants" because she just needs time to retain a new attorney. ECF 350, prior case. *Sixteen days* later, and before her case is even dismissed, Plaintiff had a telemedicine interview with Dr. Filler on January 3, 2024, which

2

included a "partial Zoom neurologic exam as set forth" in the report. *See* Filler's Suppl. Rep't, p. 1 (listing date of service as January 3, 2024), p. 4. Dr. Filler further notes in his report that he has reviewed "photographs obtained on the day of the injury," Plaintiff has filled out a "systems questionnaire," which has never been provided or produced in discovery, and Dr. Filler has reviewed "more records from before and after the fall . . . ." *Id.* at pp. 1, 2-3, 6. Specifically which records Dr. Filler reviewed are not listed; they are just referred to generically as records belonging to Dr. Haysbert. Dr. Filler's report contains multiple new opinions that specifically respond to the defects raised by defense counsel in the previously filed motions *in limine*, including that Plaintiff has "a number of problematic post concussive symptoms." *Id.* at p. 6. Dr. Filler even goes so far to opine that the "fall that [Plaintiff] suffered on May 23, 2018, was due to extrinsic factors such as she describes a slipperiness on the floor and that it did cause sufficient impact to have produced post concussive symptoms." *Id.* Dr. Filler also makes opinions as to future treatments Plaintiff will need to manage her 'post-concussive' symptoms. *Id.*

Notably, despite this report being authored January 3, 2024, *no explanation* is given as to why it was disclosed more than one year later, on January 10, 2025.

### III.  MR. AVRIT'S NEW OPINIONS

Mr. Avrit's prior report included a number of inadmissible opinions related to Defendants' policies and procedures. Mr. Avrit's new report "is based on the materials [he has] reviewed thus far and additional evidence related to condensation forming on the subject flooring." *See* Avrit's Suppl. Rep't, p. 1. When listing the "additional documents reviewed" for this 2025 report, no explanation is offered as to why it was not available to him when he made his initial opinions in 2021. Specifically, Mr. Avrit's Supplemental Report completely changes his opinions related to the cause of Plaintiff's fall.

3

Mr. Avrit's prior report discussed the March 7, 2018 work order and states: "Based on the weather data my staff retrieved through reliable online resources there was rain in the weather report on the day of the incident. This would have most likely caused moisture to be tracked within the subject entrance and throughout the immediate area." Avrit 2021 Rep't, p. 9. Mr. Avrit further stated in his report that he was "unable to determine the exact nature of the defective floor which was improperly refinished according to Defendant's own work order." *Id.* at p. 14 (referring to March 7, 2018 work order). However, because Mr. Avrit is not a meteorologist and his assumption related to weather was inaccurate – all witnesses have testified that it did not rain the day of the incident – and because Plaintiff had the burden to prove the floor was defective, Defendants did not feel compelled to take further action regarding these clearly inadmissible opinions,[1] other than to note their objections to Mr. Avrit's testimony in the Pretrial Order. Then, Plaintiff withdrew Mr. Avrit as a witness at the prior trial.

Now, Avrit's supplemental report states:

> I personally analyzed climatology data acquired through the National Oceanic & Atmospheric Administration for the date of the subject incident that occurred on May 23, 2018 between the hours of 6pm and 8pm daylight saving time as it is my understanding that the State of Virginia sets the clock forward one hour in the month of March. Therefore, the time span between 1700 (5pm) to 1900 (7pm) hours were analyzed to account for the change of time. (a true and correct copy of the climatology data is attached hereto as **Exhibit 'L'**) It is my opinion that the outdoor weather conditions present between the time span of 5pm to 7pm in combination with the testimony that the temperature range inside the building was only adjustable between 69 degrees Fahrenheit and 74 Degrees Fahrenheit were within the parameters needed for condensation to form on the floor surface. The climatology data provides various parameters that are used to design and also analyze moisture problems within a structure and negative pressures cause the outside moisture to be forced inside the building and if the buildings mechanical air moving systems do not compensate for the additional moisture intrusion condensation will form (reference building science document 014 "Controlling Air

---

[1] Mr. Avrit's report also included other improper opinions that made legal conclusions, such as Defendants knew or should have known of the wet floor, and that Defendants' policies and procedures were below the standard of care.

>Flow Through Enclosures" attached hereto as Exhibit 'M'). The weather data shows that there were positive pressures prior to 4pm standard time (5pm in Virginia) and the positive pressures began to change into negative pressures within a short span of time. Additionally, winds from 7 miles per hour at 60 degrees to 5 miles per hour at 20 degrees were present and **Figure 1** below is a map of the property with yellow arrows depicting the direction of the wind traveling towards the front entrance.
>
>The dew point is the temperature where the moisture in the air is visibly seen as a liquid. So, when the temperature of the floor surface is below that of the dew point temperature, the moisture in the air from the high humidity that was present will condensate and liquid water will form on the floor surface. The article by Green Building Advisor (a true and correct copy of the article attached hereto as **Exhibit 'N'**) explains how the temperature varies between the floor surface, the elevation where the thermostat is placed and the ceiling elevation. A single story structure with a slab on grade such as the subject premises with a thermostat set at a temperature of 72 degrees placed 4 feet off the ground floor will have a temperature of 65 degrees on the floor surface because of the fact that heat rises (the same temperature at the ceiling level would be 79 degrees. Therefore, it is my opinion that with the thermostat set within the range that was available from 69 to 74 degrees, and based on the weather data that the dew point temperature was 67 degrees, conditions existed (floor temperature below the dew point) where liquid moisture from the air would condense on the floor surface present at the time of Plaintiff's slip incident.

Avrit's Suppl. Rep't, pp. 6-8.

Thus, whereas Mr. Avrit previously stated that he was unable to determine why the floor was defective, Avrit 2021 Rep't, p. 14, and it was possibly raining on the day of the incident, Avrit 2021 Rep't, p. 9, now Mr. Avrit makes meteorological opinions that the dew point permitted condensation to form on the day of the incident. These are completely new opinions based on data that was easily accessible to Mr. Avrit back in 2021. Further, no explanation is provided as to how a civil engineer is qualified to make such opinions. If this had been Mr. Avrit's opinion back in 2021, Defendants certainly would have retained a meteorologist or similar expert to respond to these specious opinions. This is also clearly intended to bolster Plaintiff's liability argument as well as bolster arguments as to the admissibility of the March 7, 2018 work order.

5

## IV. STANDARD AND ARGUMENT

Federal Rule of Civil Procedure 26(a) requires parties to identify experts and disclosure "must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). This report "*must* contain . . . a complete statement of all opinions the witness will express and the basis and reasons for them." *Id.* (emphasis added).

Expert disclosures must be supplemented when required under Rule 26(e). Fed. R. Civ. P. 26(a)(2)(E). Rule 26(e) provides:

> (2) *Expert Witness.* For an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due.

Furthermore, supplementation must be "in a timely manner . . . ." Fed. R. Civ. P. 26(e)(1)(A).

A. *These New Opinions are not 'Supplemental' Opinions, but Plaintiff's Attempts to Bolster her Case and are Evidence of Gamesmanship.*

Plaintiff's counsel has represented that these new opinions of Dr. Filler and Mr. Avrit are intended to 'supplement' their prior opinions. However, supplementation is only required when a party "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). Here, Plaintiff has not articulated how Dr. Filler's and Mr. Avrit's reports were 'incomplete' or 'incorrect.' Rather, she is clearly bolstering their opinions with information that they easily could have had access to in 2021. "Supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Keener v. United States*, 181 F.R.D. 639, 640 (D. Mont. 1998) (finding that the 'supplemental' report of the party was clearly attempting to

cure an initial deficient expert designation); *see also Coles v. Perry*, 217 F.R.D. 1, 3-4 (D.D.C. 2003) ("When the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of [Rule 26 disclosures] is nullified."); *East West, LLC v. Rahman*, No. 1:11-cv-1380, 2012 U.S. Dist. LEXIS 133381, at *21 (E.D. Va. Sep. 17, 2012) ("This court must first determine whether the defendant's supplemental disclosures were 'true supplementation' rather than 'gamesmanship and delay.'"). If it is a new opinion, as opposed to a true supplementation, "this Court will apply the five-fold factors in order to discern a remedy." *East West, LLC*, 2012 U.S. Dist. LEXIS 133381, at *21 (citing *Luma Corp. v. Stryker Corp.*, 226 F.R.D. 536 (S.D. W. Va. 2005); *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592 (4th Cir. 2003)).

Plaintiff is inappropriately characterizing these new reports as 'supplemental' in hopes to bring it within Rule 26(e), however, it is clear that these are, in fact, new opinions. "The mere fact that [Plaintiff's] First Report does not state all of the opinions it would now like to admit does not give them free reign to submit those opinions under the guise of supplementation, and it certainly does not mean that the Court must now admit them." *East West, LLC*, 2012 U.S. Dist. LEXIS 133381, at *21.

> To countenance a dramatic, pointed variation of an expert's disclosure under the guise of Rule 26(e)(1) supplementation would be to invite the proverbial fox into the henhouse. The experienced expert could simply "lie in wait" so as to express his genuine opinions only after plaintiff discloses hers. While a variation of this practice is contemplated by the Rules, true rebuttal must occur within 30 days of the original expert disclosure. Otherwise, it fails as admissible proof because the late disclosure of rebuttal opinions is disallowed under the Rules. *See* Rule 26(a)(2)(C).

*Keener*, 181 F.R.D. at 641.

Thus, as demonstrated above, this late-attempt to 'supplement' is clearly as a result of Plaintiff's gamesmanship.

B. *Sanctions are Permissible*

If there has been a failure to disclose, the party is "not allowed to use that information or witness" at trial. Fed. R. Civ. P. 37(c)(1). This sanction is "self-executing" and "automatic." Fed. R. Civ. P. 37, advisory committee's note to 1993 amendments. The only exception is if the "failure was substantially justified or is harmless." *Id.* The Fourth Circuit applies a five-factor test:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003) (citations omitted). There is no requirement of a "finding of bad faith or callous disregard of the discovery rules." *Id.* The rule "generally requires exclusion of evidence that a party seeks to offer but has failed to disclose . . . ." *Id.* (citing Fed. R. Civ. P. 37(c)(1)).

Here, there is certainly surprise, as Defendants learned of the new opinions on January 10, 2025. There is no ability to cure, as discovery has been closed for years. The evidence would absolutely disrupt trial, and it would be incredibly detrimental to allow yet another continuance of the trial date, as this trial has already been continued multiple times *and* Plaintiff has already been granted a voluntary dismissal, over the objection of Defendants. If this evidence was so important to Plaintiff and her case strategy, there is no explanation as to why she waited *years* to designate these new opinions. Lastly, Plaintiff has offered no explanation for her failure to disclose these opinions other than stating current counsel for Plaintiff was "not in a position to do so" earlier and it was "not something that [she] had access to . . . ." Ex. 1, Jan. 10, 2025 email.

In addition to striking the experts or the expert testimony, "the court, on motion and after giving an opportunity to be heard:

8

    **(A)** may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
    **(B)** may inform the jury of the party's failure; and
    **(C)** may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)–(vi)."

Fed. R. Civ. P. 37(c)(1). Rule 37(b)(2)(A)(i)–(vi) provide that additional appropriate sanctions include:

    **(i)** directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
    **(ii)** prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
    **(iii)** striking pleadings in whole or in part;
    **(iv)** staying further proceedings until the order is obeyed;
    **(v)** dismissing the action or proceeding in whole or in part;
    **(vi)** rendering a default judgment against the disobedient party.

Defendants intend, through this filing, to notify the Court that defense counsel will make an oral motion for sanctions, as permitted in Federal Rule of Civil Procedure 37(c), as well as any other permissible remedy. Due to Plaintiff's last minute notice of this 'supplementation,' defense counsel has not had sufficient time to research and brief these issues.

    **V.**     **RELIEF SOUGHT**

Having only received notice a few days prior to the pre-trial conference that Plaintiff not only intended to supplement her expert disclosures, but also provided her experts with new and additional evidence on which to base their new opinions, this list is not intended to be exclusive. If the Court is unwilling to grant the relief requested, Defendants request an opportunity to brief the matter further.

    A. *Dr. Filler and Mr. Avrit should be Struck as Experts.*

It is patently inequitable to allow Dr. Filler and Mr. Avrit to testify. They have conducted new and additional investigations and created new and additional opinions, which were never previously disclosed. Simply striking their new opinions would not be sufficient. Dr. Filler and

9

Mr. Avrit are tainted by the new information that they have learned and the new opinions they have formed. Even if this Court were to instruct these experts to only testify as to their previously disclosed opinions, counsel would have no way to tell whether the testimony these experts provide at trial are based on the information they knew in 2021 versus the information they learned after the first trial.

> B. *Dismissal with Prejudice is Warranted or, at the very least, This Court should Reinstate the Conditions of the January 11, 2024 Voluntary Dismissal Order and Strike Plaintiff's experts.*

First, Plaintiff clearly misrepresented to the Court why she sought a voluntary dismissal. While Plaintiff stated in her brief that she needed additional time to locate counsel and that she did not have the capacity to represent herself in a federal case, ECF 350 p. 3, somehow Plaintiff still managed to set up a Zoom interview with Dr. Filler and ensure that he had her relevant medical records[2], *see* Filler's Suppl. Rep't, p. 1 (listing date of service as January 3, 2024), p. 4. This Court granted the voluntary dismissal on January 11, 2024 based on certain conditions, which included "[t]o the extent that any designated expert witnesses were previously withdrawn, those expert witnesses will remain withdrawn." ECF 356, 357, former case. These conditions were consented to by Plaintiff on the record. *Id.*

Despite consenting to the terms of the voluntary dismissal, Plaintiff then later, on February 1, 2024, filed a "Motion for Clarification and Reconsideration of the Court's Voluntary Dismissal Order," asking the Court to "[r]econsider the condition that any previously disclosed but withdrawn expert witnesses remains withdrawn." ECF 361, former case. At no point did Plaintiff advise the Court that she had been seen by Dr. Filler or provided him with her medical records.

---

[2] Plaintiff's former attorney, Nazereth Haysbert, filed an Affidavit on February 10, 2024 with this Court stating that he has not "practiced law in this case without authorization since August 23, 2023." ECF 363 ¶ 9, former case.

10

*See generally* ECF 361, 362, former case. Plaintiff continued to represent that she was unrepresented by counsel. *See generally id.* Plaintiff then argued that, again, there would be no prejudice to Defendants because having to re-try the case is not considered prejudice under Rule 41(a)(2). ECF 362 pp.14-15.

However, using a voluntary dismissal to allow a party to investigate and prepare new expert opinions in order to respond to the deficiencies and defense strategies brought to light at the prior trial is certainly prejudicial to Defendants. Especially when these new opinions are provided 46 days prior to trial *with no explanation* as to why they were withheld other than current counsel for Plaintiff was "not in a position to do so" earlier and it was "not something that [she] had access to . . . ." Ex. 1, Jan. 10, 2025 email.

    C. In the Alternative, Defendants should be Granted the Opportunity to Supplement their Expert Disclosures with New Opinions.

The prejudice of Plaintiff's actions is abundantly clear – she moved for a voluntary dismissal to remove this case from the active trial docket to allow her experts additional time to research and form new opinions. Now, weeks before trial, Defendants have no opportunity to conduct discovery or retain an expert to respond to these new opinions. Defense had no notice that Plaintiff intended to supplement her expert designations and Plaintiff never moved for leave to supplement; she just supplemented. Defendants therefore, in the alternative, request that expert discovery be opened back up and that Defendants be permitted a reasonable time to supplement their expert designations to include, but not limited to, an opportunity to respond to these new opinions as well as add any additional opinions.

    D. Defendants Reserve the Right to ask for Fees and Costs.

Undersigned does not have sufficient time to research and brief a motion for fees and costs. However, Defendants do not intend to waive such a claim. Plaintiff's counsel was notified of

Defendants' intention to move for fees and costs, as well as other relief, on January 10, 2025, when the 'supplemental' expert reports were provided. *See* Ex. 1. Defendants previously requested costs in opposition to Plaintiff's Motion for Voluntary Dismissal, pursuant to Federal Rule of Civil Procedure 41(d), ECF 355 p. 9, but it was never ruled upon by this Court.

## VI.  CONCLUSION

Wherefore, the foregoing considered, the Defendants, Outback Steakhouse of Florida, LLC and Bloomin' Brands, Inc., by counsel, request this Court sustain these objections, dismiss this matter with prejudice, or, in the alternative, impose certain additional sanctions on Plaintiff, as set forth above, and for any other relief this Court deems just.

**BLOOMIN' BRANDS, INC.**
**and OUTBACK STEAKHOUSE**
**OF FLORIDA, LLC**
By Counsel

McGAVIN, BOYCE, BARDOT,
 THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:    (703) 385-1000
Facsimile:    (703) 385-1555

   /s/ *Emily K. Blake*
John D. McGavin (VSB 21794)
Emily K. Blake (VSB 90562)
jmcgavin@mbbtklaw.com
eblake@mbbtklaw.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

     I hereby certify that on January 14, 2025 the following was e-filed and served upon counsel of record:

     Mary T. Morgan, Esq.
     PARKER POLLARD WILTON & PEADEN
     4646 Princess Anne Road, Unit 104
     Virginia Beach, Virginia 23462
     Telephone: (757) 384-3166
     Facsimile: (866) 212-1310
     Email: mmorgan@parkerpollard.com
     *Counsel for Plaintiff*

                                              /s/ *Emily K. Blake*
                                              Emily K. Blake (VSB 90562)