UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

**JOANN WRIGHT HAYSBERT,**

        **Plaintiff,**

v.                                              Civil Action No.: 4:24-CV-87

**OUTBACK STEAKHOUSE OF
FLORIDA, LLC, AND
BLOOMIN' BRANDS, INC. et al.,**

        **Defendants.**

**MEMORANDUM IN SUPPORT OF MOTION TO RECONSIDER
ORDER EXCLUDING PLAINTIFF'S EXPERT WITNESS**

COMES NOW plaintiff Joann Wright Haysbert, by counsel, and for her Memorandum in Support of its Motion to Reconsider the Court's sanctions excluding Plaintiff's designated expert witness Aaron Filler, M.D. ("Dr. Filler"), states as follows:

**Standard of Review**

A motion to reconsider an interlocutory order is governed by Fed. R. Civ. P. 54(b). "[A]ny order . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." See *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983); *Nanendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022); *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017).

The District Court's discretion to reconsider and modify interlocutory orders is "broad" but "not limitless". *Carlson*, 856 F.3d at 325. A court "may revise an interlocutory order under the same circumstances in which it may depart from the law of the case", including to avoid "manifest

injustice". *Id*. (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003); *see also Steele v. Goodman*, 2023 U.S. Dist. LEXIS 101353, *5 (E.D. Va. 2023)).

## Plaintiff Seeks Limited Reconsideration

Plaintiff files this Motion to Reconsider the Court's decision to wholly exclude Dr. Filler as a sanction under Fed. R. Civ. P. 37(c)(1) for failure to timely supplement discovery and expert disclosures. The instant motion does not seek reconsideration of the other rulings made by the Court, and specifically does not seek reconsideration of the sanction striking Dr. Fillers 2024 Evaluation Report.

## Relevant Procedural History

The procedural history is extensive, covering the present case ("Present Case") and prior case of *Haysbert v. Outback Steakhouse of Florida, LLC*, 4:20-cv-00121-RBS-RJK ("Prior Case"). For present purposes, the most critical procedural waypoints may be summarized as follows:[1]

1.  On June 21, 2021, Plaintiff timely served an expert disclosure in the Prior Case pursuant to Fed. R. Civ. P. 26(a)(2) designating (among other expert witnesses) Dr. Filler (the "Initial Expert Designation").

2.  On August 8, 2023, the parties commenced a jury trial in the Prior Case. Dr. Filler testified before the jury on August 10, 2023. On August 14, 2023, the Court considered and orally granted Defendants'[2] motion for a mistrial and thereafter confirmed the same by written memorandum order (Prior ECF 315).

3.  The Court further granted Defendants' motion to revoke the *pro hac vice* admission

---

[1] Citations to the Present Case will appear as (ECF __ ); citations to the Prior Case will appear as (Prior ECF ___).

[2] Defendant Bloomin' Brands, Inc. was dismissed as a party defendant effective January 24, 2025. However, most of the references in this Memorandum relate to past events during which such party was joined and participating in the action. As such, for convenience Plaintiff uses the capitalized plural term "Defendants" to refer collectively to former party defendant Bloomin' Brands, Inc., and remaining defendant Outback Steakhouse of Florida, LLC, except where context requires otherwise.

of Plaintiff's lead trial counsel Nazareth Haysbert, Esq., and entered a written memorandum order regarding the same (Prior ECF 315). On October 12, 2023, the Court granted leave for Plaintiff's local counsel Adam McKelvey, Esq., to withdraw as counsel from the Prior Case (Prior ECF 333). Thereafter, Plaintiff proceeded *pro se* from October 12, 2023, through September 9, 2024, when Mary M. Morgan, Esq., of the law firm of Parker, Pollard, Wilton & Peaden, P.C. ("Current Counsel"), noted her appearance. (ECF 16).

4. The following occurred during Plaintiff's time as a *pro se* litigant:

   a. On January 3, 2024 Plaintiff sought medical treatment from Dr. Filler.[3] On such date, Dr. Filler conducted a telemedicine examination of Plaintiff and prepared a written "New Patient Evaluation" report (hereafter the "2024 Evaluation Report").

   b. On January 11, 2024, the Court entered a voluntary dismissal of the Prior Case with conditions, terminating the Prior Case ("Voluntary Dismissal"). (Prior ECF 357).

   c. On June 11, 2024, Plaintiff filed her Complaint initiating the Present Case (ECF 1).

5. On January 10, 2025, Current Counsel e-mailed Defendants' counsel a copy of the 2024 Evaluation Report. As previously represented to the Court, Current Counsel did not review or obtain a copy of the 2024 Evaluation Report until five (5) business days prior to providing the same to Defendants' counsel. Transcript of 1/16/2025 Final Pretrial Conference [hereinafter "Tr."] 32:8-14.

---

[3] Plaintiff's previous treating physician, Dr. Lind Chinnery, died during the pendency of the Prior Case.

3

**Defense Objections and Motion in Limine**

On December 16, 2024 (after being notified of Dr. Filler's additional treatment of Plaintiff, but before receiving the 2024 Evaluation Report), Defendants filed an omnibus Motion in Limine which included an "Eighth Motion in Limine" seeking to exclude Dr. Filler from testifying at trial (the "Motion in Limine") (ECF 32).

On January 14, 2025 (after receiving the 2024 Evaluation Report), Defendants filed their "Objections to Plaintiff's Supplemental Expert Disclosures and Request for Relief, Including Striking Plaintiffs' Experts", seeking to exclude both the 2024 Evaluation Report and Dr. Filler. (the "Defense Objections") (ECF 36).

**Court's Rulings Excluding Dr. Filler**

On January 16, 2025, the Court made an oral ruling granting Defendants' request to strike Dr. Filler as a trial witness. The Court indicated that Dr. Filler was excluded from trial as a sanction under Fed. R. Civ. P. 37. Tr. 70:12-15. The Court confirmed its oral ruling in its Final Pretrial Order by noting that: "Dr. Filler is excluded from trial under Fed. R. Civ. P. 37(c)(1) for Plaintiff's failure to timely supplement." Final Pretrial Order sec. A(12) (ECF 41). Finally, the Court entered an Order granting in part and denying in part the Motions in Limine, but expressly granting Defendants' eighth Motion in Limine and striking Dr. Filler as a trial witness. Order of 1/24/2025, sec. 6 and n.3 (ECF 42).

**Argument**

A. <u>The "Automatic Sanction" of Fed. R. Civ. P. 37(c) is Most Appropriate in this Context and the "Alternative Sanctions" are Inappropriate</u>

Fed. R. Civ. P. 37(c)(1) authorizes the Court to issue sanctions if a party fails to meet its obligations to supplement expert reports under Fed. R. Civ. P. 26(e). Rule 37(c)(1) provides in relevant part that:

4

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The Fourth Circuit has referred to such limited exclusion of non-disclosed evidence as the "automatic sanction" of Fed. R. Civ. P. 37(c)(1). *See Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 595 n.2 (4th Cir. 2003).

The "automatic sanction" is commonly awarded by this Court as a matter of course. *See, e.g., Disney Enterprises, Inc. v. Kappos*, 923 F. Supp. 2d 788, 796 (E.D. Va. 2013); *East West, LLC v. Rahman*, 2012 WL 4105129, at *7 (E.D. Va. Sept. 17, 2012); *Rambus, Inc. v. Infineon Technologies AG*, 145 F. Supp. 2d 721, 735 (E.D. Va. 2001. See also *SSS Enters., Inc. v. Nova Petroleum Realty, LLC*, 533 F. App'x 321, 324 (4th Cir. 2013) (unpublished) (upholding the district court's exclusion of untimely filed expert reports); *Campbell v. United States*, 470 F. App'x 153, 157 (4th Cir. 2012) (unpublished) (same).

Fed. R. Civ. P. 37(c)(1) further provides that the Court may award other forms of sanctions. However, such "alternative sanctions" are not granted as a simple matter of course, and in the seminal *Southern States* case, the Fourth Circuit cautioned that:

> The Rule 37(c) advisory committee notes emphasize that the automatic sanction of exclusion provides a strong inducement for disclosure of material that the disclosing party would expect to use as evidence. The alternative sanctions referenced in the rule are primarily intended to apply when a party fails to disclose evidence helpful to an opposing party. This is because preclusion of evidence is not an effective incentive to compel disclosure of information that, being supportive of the position of the opposing party, might advantageously be concealed by the disclosing party.

*Southern States*, 318 F.3d at 595 n.2 (4th Cir. 2003) (internal quotations and citations omitted) (citing *Moore's Federal Practice* §§ 37.69[2][b], 37.61 (3d ed. 2002); Fed. R. Civ. P.37(c) advisory committee note (1993)).

5

In the present case, there has been no suggestion that 2024 Evaluation Report contains information "helpful" to the Defendants. The Court characterized the 2024 Evaluation Report as "very beneficial to plaintiff and detrimental to defense...". Tr. 39:2-3. As such, the general rule enunciated in *Southern States* suggests that the "automatic sanction" of excluding the 2024 Evaluation Report is sufficient, and that the broader "alternative sanction" of striking Dr. Filler entirely is unwarranted.

B.  <u>The Discovery Issues in Question are Unique and Complex, and Plaintiff's Actions were Understandable and Taken in Good Faith.</u>

In the Motion in Limine, filed in December of 2024, the Defendants complained that:

> ... counsel for Plaintiff indicated that Dr. Filler has even treated Plaintiff since last year's trial, however, Plaintiff has never sought to amend her designation, provide any treatment records, or provide literally any information other than a brief mention in a phone call. Therefore, Defendants' [sic] object to any facts or opinions not properly designated by Plaintiff.

Motion in Limine ¶ 6 (ECF 32). Defendants' initial argument is a textbook objection to a failure to supplement and accompanying request to exclude as an automatic sanction under Fed. R. Civ. P. 37(c)(1). Defendants complained that Plaintiff failed to make a timely supplementation of the Initial Expert Designation as required by Fed. R. Civ. P. 26(e) and argued the Court should exclude Plaintiff from introducing or relying on any facts or opinions "not properly designated" under the Initial Expert Designations submitted in June of 2021.

However, by January 14, 2025 (following Plaintiffs' production of the 2024 Evaluation Report), the Defendants' argument had effectively reversed. Rather than argue that the Court should sanction the Plaintiff for <u>failing to supplement</u>, Defendants argued precisely the opposite – asserting instead that Plaintiff's very <u>act of supplementing</u> violated the Court's Voluntary Dismissal Order (Prior ECF 357). Specifically, Defendants asserted that:

6

> Plaintiff's counsel has represented that these new opinions of Dr. Filler and Mr. Avrit are intended to "supplement" their prior opinions. However, supplementation is only required when a party "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). Here, Plaintiff has not articulated how Dr. Filler's and Mr. Avrit's reports were "incomplete" or "incorrect." Rather, she is clearly bolstering their opinions with information that they easily could have had access to in 2021.
>
> \*          \*          \*
>
> Plaintiff is inappropriately characterizing these new reports as "supplemental" in hopes to bring it within Rule 26(e), however, it is clear that these are, in fact, new opinions.
>
> \*          \*          \*
>
> Thus, as demonstrated above, this late-attempt to "supplement" is clearly as a result of Plaintiff's gamesmanship.

Defense Objections at 6-7 (ECF 36).

Defendants' Motion in Limine and Defense Objections are logically inconsistent. Both legal contentions cannot be simultaneously valid. If the Voluntary Dismissal Order prohibited all supplementation of expert reports and designations, as Defendants contended in their written Defense Objections and at oral argument, then the mere fact that Plaintiff sought to supplement by producing the 2024 Evaluation Report would be a violation of that Order, and sanctionable as a violation of the Voluntary Dismissal Order. However, if that was the case, Plaintiff could not possibly be in violation of Fed. R. Civ. P. 26(e), since the Voluntary Dismissal Order's prohibitions would have overridden the Rule 26(e) obligation to supplement, and accordingly Plaintiff could not be subject to sanctions under Fed. R. Civ. P. 27(c)(1), for failing to supplement the Initial Expert Report in a timely fashion.

That inherent tension is even more pronounced given that the 2024 Evaluation Report is not, by any reasonable stretch of imagination, composed on a form that suggests it was intended

7

as a formal expert witness designation (supplemental or otherwise). It purports on its face to be a new patient evaluation form and bears few of the benchmark requirements contemplated by Fed. R. Civ. P. 26(a)(2).[4] It is precisely what it appears to be – a new patient evaluation report prepared by a treating physician upon his initial examination of a new patient.

The Court and counsel for both parties grappled extensively with this conundrum at the Pretrial Conference with the Court ultimately concluding:

> I think Ms. Morgan is likely right about her duty to supplement. The issue here is that we are at the final pretrial conference. These documents, the supplements themselves, were drafted a year ago. And they are, in my view, especially more Mr. Avrit's than Dr. Filler's, not really supplements to begin with, but shoring up of opinions in a way that's very beneficial to plaintiff and detrimental to defense, and the problem is, is that it just would be fundamentally unfair to the defendants to have to suddenly deal with these new opinions, the facts upon which they're based, without an opportunity to have a new opportunity to depose these witnesses, to investigate the claims that they have made, to look behind the opinions themselves.
>
> And so, I can recognize I think that, Ms. Morgan, you may have been in a bit of a tight spot regarding what to do with them. I think, like I said, you likely probably did have to supplement, but that's a separate issue from whether or not those opinions reflected in the supplemental reports should come into evidence at trial.

Tr. 38:20 – 39:14.

The Court's statements above are consistent with its written rulings. The Court ultimately concluded that while the 2024 Evaluation Report defies easy categorization as a supplement expert designation, Plaintiff had an obligation to supplement by producing the report to Defendants' counsel. Accordingly, the Court sanctioned Plaintiff under Fed. R. Civ. P. 37(c)(1) for failing to promptly supplement the Initial Expert Designation under Fed. R. Civ. P. 26(e). However, the

---

[4] *E.g.*, a description of expert opinions to be offered, excerpts of the expert's curriculum vitae, a catalog and description of the tests, data and treatises upon which the opinions are based, etc.

Court's rulings necessarily stand as an unequivocal rejection of Defendants' interpretation that the Voluntary Dismissal Order prohibited supplementation of any kind.

The above point may be esoteric on its own stead and is not directly at issue in this Motion to Reconsider. However, counsel describes the technical complexity above to advance a very simple proposition. The procedural issues in this case are extremely complicated.

Teams of experienced counsel on both sides, all well-versed in the day-to-day practical operation of the Federal Rules of Civil Procedure, engaged in good faith in lengthy, detailed briefing, exposition and argument to the Court regarding the appropriate procedural framework to apply to these unique circumstances. At the end of such arguments, the Court explicitly noted the inherent uncertainty faced by Plaintiff's Current Counsel, and then reached a conclusion which did not fully accord with the view of counsel for either party. Nothing about the circumstance or procedure surrounding the 2024 Evaluation Report was straightforward or legally certain.

Beginning in January of 2024, the Plaintiff faced a personal situation only tangentially related to her status as a litigant in the Eastern District of Virginia. Her prior neurologist, Dr. Chinnery, had unexpectedly died, and she required further medical treatment. It was natural, and not in any way improper, for Plaintiff to seek treatment from Dr. Filler, a renowned neurosurgeon who already possessed detailed information regarding her injuries and condition. There was nothing improper or underhanded in Plaintiff seeking medical treatment from Dr. Filler.

There is absolutely no evidence in the record as to when Plaintiff actually received a copy of the 2024 Evaluation Report prepared by Dr. Filler. However, even if the Court presumes that Dr. Filler provided his new patient intake report to his patient on the very day of the examination (January 3, 2024), Plaintiff would have been in possession of such report for less than a week

9

before the Court granted the Voluntary Dismissal Order (Prior ECF 357).[5] The Voluntary Dismissal Order ended the Prior Case and necessarily ended any ongoing obligation of either party to supplement discovery and expert designations.

Once Plaintiff filed the present case on June 11, 2024, her obligation to supplement was presumably revived.[6] However, that technical point was far from clear, and Plaintiff, as a *pro se* litigant, should be afforded some grace in not immediately recognizing the renewed obligation (which was not explicitly reflected in any written order of the Court in the present case). Plaintiff continued in her *pro se* capacity for an additional three (3) months, until Current Counsel noted her appearance on September 9, 2024.

Once Current Counsel took over management of the case, she faced a daunting task of working through thousands of pages of documents, pleadings, witness designations, trial transcripts and deposition transcripts.[7] In December of 2024, Current Counsel learned that Dr. Filler examined and medically treated Plaintiff subsequent to the June 2021 expert designation. Current Counsel promptly notified Defendants' counsel by telephone (as Defendants have

---

[5] Oral argument on the motion for voluntary dismissal was conducted January 8, 2024, at which time the Court made an oral ruling. The accompanying Voluntary Dismissal Order was entered on January 11, 2024.

[6] The Court has concluded that the obligation to supplement discovery and designations from the Prior Case was re-invigorated when the present case was filed. However, that conclusion is not inevitable, and Defendants' arguments appear to assert precisely the opposite—that the close of discovery required by the Voluntary Dismissal Order functioned as a "standstill" Order—freezing all discovery and supplementation. *See, e.g*. Tr. 47:11-23.

[7] As the Court is aware, Current Counsel noted an appearance in the Prior Case on October 10, 2023, as counsel for interested party Nazareth M. Haysbert, Esq., former counsel for plaintiff. Current Counsel's representation at that time regarded a defense of Mr. Haysbert in connection with motions for sanctions filed by Defendants. (Prior ECF 326). During such representation, Current Counsel obtained background information about the Prior Case and gained familiarity with prior procedural history. As timely disclosed pursuant to Local Rule 83, Current Counsel also consulted with Plaintiff in connection with the filing of Plaintiff's Complaint in this present case on June of 2024.

However, the subject of Current Counsel's representation at the earlier referenced times focused on defense of Mr. Haysbert and his personal actions/omissions in the Prior Case, primarily the specific trial conduct referenced in the Motion for Sanctions. Current Counsel was not responsible for and did not undertake to review and familiarize herself with the underlying evidence, Rule 26 disclosures and prior discovery production in this case until accepting retention as counsel for Plaintiff in September of 2024.

10

acknowledged in the Motion in Limine filed December 16, 2024). (ECF 36). In early January of 2025 Current Counsel first obtained a copy of the 2024 Evaluation Report and produced the same to Defendants within five (5) business days. Notably, this is not a situation where Defendants identified or inferred the existence of missing discovery materials, and compelled production or obtained information via other means. Plaintiff ultimately produced the information in question voluntarily and on her, and her counsel's, own initiative. Nothing in the above timeline suggests intentional delay or "gamesmanship" by Plaintiff or her counsel.

  The Defendants are absolutely correct that under the Fourth Circuit's prevailing interpretation of Fed. R. Civ. P. 37(c)(1), bad faith, callous disregard and/or other egregious conduct is not a prerequisite for sanctions. *Southern States*, 318 F.3d at 595. However, the footnotes in that seminal case are equally clear that in general, the appropriate sanction for failure to supplement is the "automatic sanction" of excluding the material that was not produced in a timely fashion. The "alternative sanctions" (including the sanctions more generally prescribed by Fed. R. Civ. P. 37(b)(2)(A)) are generally reserved for situations where the non-disclosing party has attempted to conceal materials helpful to the opposing side. Since that factor is not present in this case, it follows that this Court should have some other grounds on which to choose to issue the "alternative sanctions" in a deviation from the general guidance provided in *Southern States* (and by the advisory committee notes cited in such decision).

  In contexts other than the specific sub-provisions of Fed. R. Civ. P. 37(c)(1)(A), the Fourth Circuit has articulated a familiar standard governing discovery sanctions under Rule 37. Given that the "alternative sanctions" awarded by this Court under Fed. R. Civ. P. 37(c)(1)(A) are authorized via the statutory incorporation of the sanctions otherwise outlined in Fed. R. Civ. P. 37(b)(2)(A)(ii), it is appropriate to consider the Fourth Circuit's more generalized Rule 37

11

sanctions standards as well.

*Anderson v. Foundation for Advancement, Education and Employment of American Indians*, sets out the prevailing, four-part test for general Rule 37 sanctions. That test considers:

    (1)    whether the non-complying party acted in bad faith;

    (2)    the amount of prejudice that noncompliance caused the adversary;

    (3)    the need for deterrence of the particular sort of non-compliance; and

    (4)    whether less drastic sanctions would have been effective.

155 F.3d 500, 504 (4th Cir. 1998). *See also Vir2us, Inc. v. Invincea, Inc.*, 235 F. Supp. 3d 766, 779-780 (E.D. Va. 2017); *Samsung Elecs. Co. v. Nvidia Corp.*, 314 F.R.D. 190, 200 (E.D. Va. 2016). The present case fails to meet any of the four *Anderson* factors.

As detailed above, Plaintiff did not remotely act in bad faith. There was nothing improper in Plaintiff seeking medical treatment from the most qualified physician available to her. As revealed by the detailed timeline discussed above, it is impossible to conclude that Plaintiff acted in subjective bad faith by not promptly producing the 2024 Evaluation Report, in light of the unusual circumstances and byzantine procedural complexity surrounding the issue.

Despite their somewhat hyperbolic protestations, Defendants have not suffered any prejudice. The Court's award of the automatic sanctions of Fed. R. Civ. P. 27(c)(1) mean that Defendants do not need to expend energy and resources evaluating and rebutting any "new opinions" which may be enmeshed in Dr. Filler's new patient evaluation report. To the contrary, as matters stand Defendants have been the beneficiaries of a tremendous windfall. Plaintiff's principal expert witness, who Defendants fought unsuccessfully to prevent from testifying in the Prior Case, has been summarily stricken less than 30 days before trial. The fact that Plaintiff sought medical treatment in January of 2024 has not disadvantaged the Defendants in the slightest, and in

fact represents the greatest stroke of luck afforded them in this long and contentious litigation.

The circumstances of this case are utterly unique. As a practical matter any deterrent effect on similarly-situated parties before this Court in the future is negligible, at best—due to the fact that it is unlikely that there will be very many "similarly-situated" parties who find themselves plagued by the same unique challenges posed by this specific case.

Finally, and most importantly, there are plainly less drastic alternatives which do not fundamentally deprive Plaintiff of her ability to proceed to trial. The first, and obvious, alternative is to simply issue the "automatic sanction" provided for in Fed. R. Civ. P. 37(c)(1) and to allow that sanction to stand alone. Such remedy is more than sufficient to protect Defendants against the prejudice of being forced to address "new" evidence and opinions at a late stage of litigation. The 2024 Evaluation Report is only helpful to Plaintiff, and its exclusion is a pure sanction against Plaintiff which flows to Defendants' benefit. Secondly, and as offered by Plaintiff at the pretrial conference, since Dr. Filler has already testified on direct and cross examination in the Prior Case, the Court could permit Plaintiff to admit that prior testimony (complete with Defendants' preserved objections) and otherwise exclude Dr. Filler from testifying further. To the extent that Defendants' argument on "taint" has any merit (discussed hereafter), such sanction would fully and decisively remedy the issue.

Under the standards articulated in *Southern States*, Plaintiff's indisputable good faith does not absolutely shield her from sanctions under Fed. R. Civ. P. 37(c)(1). However, even if subjective good faith is not an absolute procedural safe harbor, it is still relevant. It is manifestly unjust for this Court to not fully consider Plaintiff's subjective good faith and/or lack of subjective culpability in the context of awarding "alternative sanctions" under Fed. R. Civ. P. 37(c)(1)(A).

13

C.     <u>Defendants' Argument Regarding "Taint" is Completely Without Precedent or Support; Any Actual "Taint" is Easily Remedied</u>

Defendants argued in both the Defense Objections (ECF 36) and at oral argument that Dr. Filler was "tainted" by the fact that he examined Plaintiff as a treating physician in January of 2024, several years after the Initial Expert Designation, and more than thirteen (13) months before the trial date in this current case. *See, e.g.*, Defense Objections at 2, 10 (ECF 36); Tr. 40:19-41:1; 42:13-21; 44:2-6; 53:5-15; 68:11-21. Defendants' argument is essentially that Dr. Filler will be simply unable to compartmentalize his knowledge and will inevitably offer opinions based upon the excluded 2024 Evaluation Report. The "taint" argument is, arguably, the central pillar of Defendants' request to exclude Dr. Filler and received the bulk of counsel's attention at the January 16, 2025, oral argument. However, Defendants have failed to identify any case law or other authority in support of this argument. Plaintiff's counsel has likewise been unable to find any precedent which would support the idea that a designated expert is irrevocably "tainted" if the expert comes into possession of additional information following formal designation.

Lack of precedent aside, the proposition is logically unsustainable. The entire point of early expert deadlines is to allow the opposition reasonable time to consider the opinions proffered and to develop defenses and counter-expert testimony. There is necessarily a significant time lapse between the designation deadline and trial. True experts, leaders in their field who remain at the top of their professions by constant study and consideration of new developments their respective industry, will invariably come into contact with new information, new concepts and new methods which may apply to their prior analysis. Specific to this case, treating physicians are definitively not barred from serving as expert witnesses, and treating physicians routinely continue to examine and treat their patients through the date of trial. The "taint" the Defendants complain about so vociferously is not unique to this case; it is necessarily endemic.

14

The "automatic sanctions" of Fed. R. Civ. P. 37(c)(1) would exclude the substance of the 2024 Evaluation Report and would limit Dr. Filler's testimony to the opinions and evidence disclosed in June of 2021. If his trial testimony is supported by the data properly disclosed in 2021, it can be admitted without any prejudice to Defendants (as it was properly admitted at trial in the Prior Case). If Dr. Filler attempts to introduce an opinion that was not disclosed in 2021, and/or is unsupported by the facts and reports provided in the initial designation, it will be a simple matter for Defendants' counsel to make the appropriate objections, and for the Court to make the appropriate rulings, at the time of trial.

Any expert witness, no matter how experienced or well-prepped, is inherently capable of straying outside of the sharply delineated (and inherently artificial) lines of the expert designation crafted by their client's counsel. Any lay witness, no matter how carefully they are questioned, is capable of blurting out information which they "know to be true", but which is inadmissible as hearsay or for some other reason. It is human nature to respond to questions based on the totality of one's knowledge, and compartmentalization is inherently artificial. However, that is an artificiality that judges, juries, lawyers, expert witnesses, and lay witnesses alike grapple with at every point in trial. Of all people, expert witnesses are in the best position to compartmentalize. They are the one class of people in the litigation process who are explicitly permitted to speculate and testify regarding scenarios created and altered by artificially constructed hypotheticals. Whatever additional insight Dr. Filler may have obtained (and personally retained in his memory) by undertaking a telemedicine consultation with the Plaintiff thirteen (13) months before trial; it is hardly likely to be the kind of revelation which would obliterate his ability to properly restrain his expert testimony to the precise data properly disclosed in his initial reports.

**Conclusion**

The ultimate question is whether the sanctions issued against Joann Haysbert are commensurate with the violations she was found to have committed; and whether those sanctions comport with the due process that both Plaintiff and Defendants are entitled to. Stated otherwise, do the sanctions reflect a manifest justice, or does the harshness of the sanctions outweigh the nature of the offense and the prejudice inflicted on the Defendants?

Plaintiff respectfully contends that the Court's decision to entirely exclude Dr. Filler is not an appropriate or proportional sanction. Plaintiff's initial failure to provide a copy of the 2024 Evaluation Report was subjectively innocent. Moreover, assuming that the automatic sanctions are retained, and that the 2024 Evaluation Report is not admitted into evidence or otherwise proffered as part of Dr. Fillers testimony, the omission is objectively inconsequential to the Defendants' preparation of this case and they will have suffered no prejudice as a result of the matter.

Plaintiff respectfully requests that this Court grant reconsideration of its issuance of sanctions, and that the Court modify the same to exclude only the substance of the January 3, 2024, Evaluation Report itself, and that the Court otherwise permit Dr. Filler to testify and/or to admit his previous testimony into evidence.

                                              Respectfully submitted,

Date: January 29, 2025                    /s/ Trevor B. Reid
                                              Mary T. Morgan, Esq. (VSB #44955)
                                              Trevor B. Reid, Esq. (VSB #77233)
                                              PARKER POLLARD WILTON & PEADEN
                                              4646 Princess Anne Road, Unit 104
                                              Virginia Beach, Virginia 23462
                                              Telephone: (757) 384-3166
                                              Facsimile: (866) 212-1310
                                              Email: mmorgan@parkerpollard.com
                                              Email: treid@parkerpollard.com
                                              *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of January 2025, I will electronically file the foregoing with the Clerk of Court using the CM/EMF system, which will send a notification of such filing (NEF) to all counsel of record, including:

> John D. McGavin, Esq.
> MCGAVIN, BOYCE, BARDOT, THORSEN & KATZ, P.C.
> 9990 Fairfax Boulevard, Suite 400
> Fairfax, Virginia 22030
> jmcgavin@mbbtklaw.com
> *Counsel for Defendants*

        /s/ Trevor B. Reid
Mary T. Morgan, Esq. (VSB #44955)
Trevor B. Reid, Esq. (VSB #77233)
PARKER POLLARD WILTON & PEADEN
4646 Princess Anne Road, Unit 104
Virginia Beach, Virginia 23462
Telephone: (757) 384-3166
Facsimile: (866) 212-1310
Email: mmorgan@parkerpollard.com
Email: treid@parkerpollard.com

4918-8983-4260, v. 3